PERCY O. WILSON *vs.* MASSACHUSETTS COTTON MILLS.

Middlesex.   March 10, 11, 1897. — June 16, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Action — Dangerous and Unboxed Machinery.*

If a person of ordinary intelligence and some experience, who is employed on a machine used for hoisting bales of cotton, having levers with which to start or stop the machine, and wheels with cogs which revolve rapidly when the machine is in motion, is injured by getting his hand into the wheels while trying to grasp the lever to stop the machine, keeping his eye fixed on a suspended bale, and not looking to see where he is putting his hand, he cannot maintain an action against his employer for his injury, upon the ground that he was set to work on a dangerous machine without instruction; nor is the machine defective because the wheels are not covered.

TORT, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the alleged negligence of the defendant.   At the trial in the Superior Court, before *Bishop*, J., the jury returned a verdict for the plaintiff, and the defendant alleged exceptions, in substance as follows.

The plaintiff was injured by having the fingers of his right hand caught between two revolving wheels of a machine used in hoisting and piling cotton.   It appeared that this machine was located in the yard of the defendant's mill, the left of the machine being very near the walls of one of its buildings, through a window of which ran a belt over the tight and loose pulleys, and the power was furnished thereby.   There was a little shed built over the machine large enough to enable a man to do his work upon the machine, and open on the right hand side, which was the side towards the cotton bales.   There was on the right of the machine a sloping bank, six or seven feet high.   The bales of cotton which the plaintiff was engaged in raising and lowering were on the same bank, about forty or fifty feet away from the machine.   There was a hydrant somewhere between the cotton bales and the place where the plaintiff stood. It was admitted that the plaintiff was a man of ordinary intelligence.   The plaintiff testified that he was twenty-seven years

of age and brought up on a farm in Maine; that he came to Lowell in 1885, and after working for a week in another mill went to work for the defendant corporation, where he continued to work to the date of the accident, December 22, 1891. He first shovelled coal for about two weeks, was then for two months a yard hand doing work in the mill yard, then a watchman, part of the time day watchman and part night watchman; during the time he was a yard hand he had nothing to do with operating machinery, but assisted to unload and take inside machinery which came to the mill; while he was night watchman he used to run a machine some, hoisting cotton that was in the storehouse. The gearing of this machine was covered or boxed, and in using it he stood in front of it instead of on the side, and the two levers of the machine were one on his right and the other on his left as he stood facing the machine; in other respects the machine was like the one upon which he was injured; when he was put to work upon the machine in the storehouse he was instructed how to run it; but he had never had any experience at work in operating any machine other than these two.

The plaintiff testified that he was set to work upon the machine on which he was injured on December 22, 1891, by the overseer and third hand; he was given no instructions how to operate it, was told to go down and run the machine; the machine was kind of down in the bank on the right side of the mill, side of the weave room down at the foot of the embankment, there was a kind of a little shed built there over it; it was a kind of dark cloudy day; there was a belt going from the speed in the mill around a pulley and out through the window to the machine in the shed; the cogs were running very fast, and there were noises, and he could not hear anything except the machine; the place where he stood was, he should think, six or seven feet from the top of the bank and forty or fifty feet away from the cotton bales which were being moved, which were also on the top of the bank; he had to watch when the men at the bales hooked on to the bales, and watch when the bales got up high enough to stop them, and when to let them down, and a hydrant intervened between the place where he stood and the cotton bales, so that sometimes they would get up so far he

would have to kind of lean over to see when they were hooked on. The witness illustrated to the jury the operation of the machine, which was in the court room, and it appeared that when operating it he stood at the side of the machine instead of in front, and that this brought both levers in front of him instead of one on each side. In describing the manner in which he received his injury he testified that the bale was going up after having been hooked on to the top of the bale to pile it up, and he was getting hold of lever No. 2 to stop it; that he was hoisting the bale with lever No. 1, and was watching to see how the bale got up " and get hold of this, you know, to let it down after it got up, and my hand went right in there when I reached after this lever," that he had to be watching this cotton to see when it got up; and " I had to kind of look over this way" (leaning). He testified that the man at the bales called out to him when to hoist, but after that he got no orders and would have to say when the time came to stop, shift his belt by the lever, and lower; that he ran the machine, piling cotton about an hour and a half in the forenoon and about an hour and a half in the afternoon, to the time of the accident.

The defendant asked the judge to rule that, upon all the evidence, the plaintiff could not maintain his action; but the judge declined so to rule.

The judge instructed the jury that the plaintiff could not recover unless he was put to work under circumstances of peculiar danger, and was not apprised of the danger; that if an employer puts a servant to the use of machinery under circumstances which impose a peculiar risk, and the servant is inexperienced in operating machinery under such or similar risks, it is the duty of the employer to apprise the servant of the dangerous character of the undertaking in which he is about to engage; and that if the use of the machinery under the circumstances testified to by the plaintiff, and in a situation he had never worked in before, imposed a peculiar risk, arising from the fact that his attention had to be placed on the cotton as a part of his duty, and his mind was fixed upon that part of the work and was thereby distracted from the machinery and gearing, and by reason thereof the injury occurred, he might recover; to which instruction, and the refusal to rule as requested, the defendant

excepted. In other respects the instructions given were not objected to by the defendant.

*G. F. Richardson*, for the defendant.

*J. C. Burke & B. D. O' Connell*, for the plaintiff.

LATHROP, J. We are of opinion that the request of the defendant for a ruling that the plaintiff could not maintain the action should have been given.

The plaintiff at the time of the accident was at work in one of the defendant's yards, on a machine used for hoisting bales of cotton. The machine was run by a belt, and had a tight pulley and a loose pulley. To start the machine the plaintiff stood at the side of the machine opposite the belt, with one hand on a lever, which, by pulling it towards him, would throw the belt from the loose pulley to the tight pulley. There was another lever, by the moving of which the belt would be thrown from the tight pulley on to the loose pulley. There was also a foot brake, which was used in controlling the speed, and in stopping the machinery. On the right of the plaintiff, as he stood at the machine, were two wheels with cogs, which revolved rapidly when the machine was in motion. There was a rope connected with a drum on the machine at one end, and the other end was attached to a derrick on the bank above. A cotton bale was hoisted from the same level as the machine to a point above the bank. The machine was then stopped, and the bale lowered to the place desired. There was a hydrant on the bank above, which to some extent obstructed the plaintiff's view; and, in order to see when the bale reached the desired height, he leaned somewhat to the right, and in endeavoring to catch hold of the lever to stop the machine, keeping his eye fixed on the bale, he got one hand into the cog wheels, and was injured. The levers were not on a line with the wheels, so that there was no necessity for him to reach across them, if his body had been in an upright position. There was also room, as he stood, to reach over the top of the wheels and grasp the lever. While there was evidence that it was a cloudy, dark day, yet there is no pretence that everything was not plainly visible; nor is there any pretence that the plaintiff did not know that the wheels were cog wheels, and that if he got his hands in them he would be injured.

The plaintiff was twenty-seven years old, and was of at least ordinary intelligence. While he had not thorough experience in this kind of work, he was by no means an inexperienced man. He had worked two or three winters on a machine used for hoisting which was very similar to this, although the gears were covered; and on the day of the accident he had worked on the machine which afterwards injured him for several hours, without encountering any difficulty.

The plaintiff's contention is that he was set to work on a dangerous machine without proper instructions. But it is difficult to see what the defendant's officers could have told him which he did not already know. It was apparent that the wheels were uncovered. They were certainly not bound to tell him that if he got his hand in the cogs he would be hurt. This any child of ten would know. Nor were they bound to tell him that if, after he saw that the cotton bale had reached its proper height, he attempted to grasp the lever without looking to see where his hand was going, he was liable to be injured. This was manifest to a person of ordinary ability, and he certainly had sufficient experience to know it. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182. *Probert* v. *Phipps*, 149 Mass. 258. *Pratt* v. *Prouty*, 153 Mass. 333. *Tinkham* v. *Sawyer*, 153 Mass. 485. *De Souza* v. *Stafford Mills*, 155 Mass. 476. *Downey* v. *Sawyer*, 157 Mass. 418. *Richstain* v. *Washington Mills*, 157 Mass. 538. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, 160. *Cheney* v. *Middlesex Co.* 161 Mass. 296. *Ruchinsky* v. *French*, 168 Mass. 68.

Nor do we see any evidence that the machine was defective. So far as appears, all parts of it were in perfect working order. Even if the accident would not have happened had the cog wheels been covered, this does not make the machine defective, as the defendant was not bound in law to cover them. *Sullivan* v. *India Manuf. Co.* 113 Mass. 396. *Gilbert* v. *Guild*, 144 Mass. 601. *Goodnow* v. *Walpole Emery Mills*, 146 Mass. 261. *Foley* v. *Pettee Machine Works*, 149 Mass. 294. *Murphy* v. *American Rubber Co.* 159 Mass. 266. *Hale* v. *Cheney*, 159 Mass. 268. *Stuart* v. *West End Street Railway*, 163 Mass. 391.

The accident appears to have been caused by an act of inadvertence on the part of the plaintiff in not looking when he put

his hand out to grasp the lever. But, if there was evidence to be submitted to the jury on the question of due care on the part of the plaintiff, we do not find any evidence of a breach of duty on the part of the defendant towards the plaintiff.

*Exceptions sustained.*