HARRY A. JONES, Admr.

*vs.*

MANUFACTURING AND INVESTMENT COMPANY.

Kennebec.    Opinion April 17, 1899.

*Negligence.   Master and Servant.   Risks voluntarily assumed.   Death-Liability Act of 1891, c. 124.*

An employee of age, and not shown to be below the average of mental capacity and intelligence, is presumed to observe and appreciate the dangers obviously incident to the operation of exposed, unguarded machinery.

The liability of round sticks of wood four feet long to slip and fall from the hooks of an upright, exposed endless chain upon which they are held by force of gravity only, while being carried up a distance of over thirty feet, is a danger obviously incident to the operation of such a machine.

If such an employee, having some weeks acquaintance with such a machine and consequent knowledge of its dangers, makes no request for further safeguards but with such knowledge proceeds to work about the machine, *held;* that he assumes the duty of using a degree of care sufficient to avoid the evident danger; or, in other words, he takes upon himself the risk of injury from such danger.

If such an employee voluntarily, even in the line of his employment, exposes himself to the danger of the sticks of wood above described slipping and falling upon him from the hooks of the chain while being carried up, he assumes the risk of injury therefrom and cannot throw the risk upon his employer.

On Motion by Defendant.

This was an action brought under the Death-Liability Act of 1891, c. 124, to recover damages for the death of Fred Poitras while in the defendant's employment at Madison, March 17, 1897. The deceased was killed by a log falling upon his head from a hoisting apparatus which he was tending. The hoisting apparatus or elevator was used for taking pulp-wood logs from freight cars into the second story of the defendant's mill.

The jury returned a verdict of $600 for the plaintiff and the defendant moved for a new trial. The facts are stated in the opinion.

*S. S. and F. E. Brown,* for plaintiff.

*S. J. and L. L. Walton,* for defendant.

Sitting: Emery, Haskell, Whitehouse, Wiswell, Strout, Fogler, JJ.

Emery, J. The defendant company was engaged in the lawful business of manufacturing pulp paper stock from wood. The raw material, the wood, was in sticks of random size about four feet long and was brought on railroad freight cars alongside of a platform near the mill. To unload the sticks from these cars and transfer them to a convenient place in the mill was the work of the defendant company. To accomplish this purpose, they used upon the opposite side of the platform from the car a lift or elevator constructed as follows:— The frame work was 38 feet 6 inches in height from the level of the platform. The two rear upright

posts or timbers were practically vertical. The two front timbers starting from the outer edge of the platform sloped back so that their tops were about eight feet back from the platform. They were a little less than three feet apart. Up and down the upper side of each of these front timbers so inclined was cut a slot or groove about eight inches wide. In this groove ran an endless metal chain belt about seven inches wide passing over a sprocket wheel below the platform and another at the top of the machine. These belts each carried in line pairs of hooks or arms projecting out and curving upward, and which were twenty-nine inches in length, and were placed about four feet apart on the belts. The distance between the outside of one pair of hooks on one belt to the outside of the corresponding pair of hooks on the other belt was forty-six inches. The distance between the inside surfaces of the same hooks was about thirty-four inches. The machine was operated by power from the mill through a chain and sprocket at the top. It was controlled by a man standing on a small platform near the top.

The mode of unloading a car with this machine was something like this: The loaded car was run alongside of the platform which was five or six feet wide. On the other side of the platform opposite the car was this machine. A bridge, or gang-plank, some two feet wide was placed across this platform from the car to the sill of the machine between the belts, one end resting by iron clamps on the edge of the car and the other end temporarily fastened to the platform by a bolt or pin. A person standing over this bolt would be between the hooks on the two endless belts above described.

The person in charge of the machine being in his place on the upper platform, two men lifted or rolled the sticks of wood from the car to the platform; two other men then lifted or rolled them on the hooks or arms above described and they were carried on these hooks up over the machine to an incline plane or trough, down which they slid by gravity to the proper place in the mill. So far as appears in the case, the motion of the belts and hooks was uniform and steady, but the sticks were held in place on the hooks

only by gravity. When the car was unloaded, one of the four men at work there pulled out the bolt at the outer end of the gang-plank and took up the plank to let in another car, when the plank was again put down, and the operation repeated.

On the 17th day of March, 1897, the plaintiff's intestate was in the employ of the defendant company and, with three other employees, was engaged in unloading pulp wood from cars at the locality of this machine. He and one other transferred the wood from the car to the platform. The other two of the four placed the sticks on the hooks of the elevator to be carried over into the mill. As the last stick of that car load was going up and before it went over the top, the deceased went to pull out the bolt of the plank in order to let in another car, and in doing so was bent over between the lower hooks and nearly under the ascending stick of wood. At that instant one end of this last stick, which probably had been previously slowly slipping, slipped endwise off the hook, and the stick fell upon the deceased killing him instantly. The man on the upper platform noticed the slipping and gave the alarm, but the stick fell before the deceased realized the situation sufficiently to escape. The wood of this car load was about four feet long, besides the scarf, and was of various sizes, and was more or less slippery from frost and ice.

It does not appear that the deceased, or any employee, was ever directed or encouraged to pull out the plank bolt as soon as the last stick of a car load was on the hooks and before it had been carried over, or was ever warned against it. Nor does it appear that he was ever told there was danger of sticks falling off the hooks. In fact there was such danger, and sticks had previously so fallen, though the deceased was not shown to have known of those instances. The machine had been used at that particular place about two years, and at other places about the mill for the same purpose about six years. The deceased was twenty-eight years old. It does not appear how long he had been at work at the mill or in this particular place. He had lived in the same town for some years. He had been at work off and on about this machine for at

least some weeks.   So far as appears he was of average intelligence and mental capacity.

Again, it does not appear what was the immediate cause of the sticks slipping and falling, whether because not properly placed on the hooks by the employees in the first instance, or because carried with an irregular motion, or because of some other circumstances. It is evident, however, that unless the sticks were placed quite evenly on the hooks at the start they would be likely to slip off.

This action is by the administrator for the benefit of the parents of the deceased under the Death-Liability Act of 1891, ch. 124,— but the plaintiff has the same burden of proof, and the defendant company can interpose the same defenses, as in an action by the deceased himself for his injuries had he survived.   The plaintiff claims that the defendant was negligent in two respects,—(1st) that it omitted to put a casing or other safeguards about the machine as it might have done, and thus removed or greatly lessened the risk of injury to its employees,—and (2d) that it did not warn the deceased of the risk of injury he incurred by working with the machine or pulling out the gang-plank bolt while sticks were on the hooks.   The defendant contends that whatever the risk it was obvious and one ordinarily attending the operation of the machine, and that under the law it rightfully presumed that the deceased saw and realized the risk and voluntarily assumed it. If this be true it is an available defense under the law.

In the absence of any stipulation or notice to the contrary, an employee of mature years and of ordinary mental capacity and intelligence is presumed to know, appreciate and assume the ordinary and apparent risks of injury from the machinery and appliances with or about which he is working.   If he does not ask for further safe-guards, or otherwise so conducts himself as to assure his employer that he is content with the machinery and appliances as they are and will himself take the chance of injury, he cannot after an injury transfer the risk to the employer.   This presumption is of course rebuttable, but is sufficient until circumstances are shown to the contrary.

The rule has been stated repeatedly with substantial uniformity

in various judicial decisions in this state and in harmony with the statements of the rule by the court of Massachusetts. In *Coolbroth* v. *Maine Central R. R. Co.*, 77 Maine, 165, at the beginning of the opinion the rule was stated in the following terms: " It is the well-settled law that a servant of mature age and common intelligence, when he engages to serve a master, undertakes as between himself and master to run all the ordinary and apparent risks of the service." In *Judkins* v. *Maine Central R. R. Co.*, 80 Maine, 418 it was said (p. 425): "Even where a master fails in his duty in respect to inspecting and repairing machinery or appliances to be used by the employee, and the servant voluntarily assumes the risks of the consequences of the master's negligence with knowledge or competent means of knowledge of the danger, he cannot recover damages of the master." In *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400, it was said (p. 406) : " It is well settled that a servant by entering the service of the master assumes all known or apparent risks which are incident to it, however dangerous the service may be, even if it might be conducted more safely by the employer." In *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396, it was said (p. 398) : " When (the employee) assents to occupy the place prepared for him, and incur the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place, might with reasonable care, and by a reasonable expense, have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so." In *Ciriack* v. *Merchants Woolen Co.*, 146 Mass. 182, it was said (p. 190) : " In the absence of anything to show the contrary, the plaintiff must be assumed to have had the intelligence and understanding which are usual with boys of his age. There is nothing to show that he did not know the danger of coming in contact with the revolving wheels of the machine. It must be assumed that he was well aware of it." In *Goodes* v. *Boston & Albany R. R. Co.*, 162 Mass. 288, it was said: " One entering the employment of another assumes the obvious risks arising from the nature of the employment, from the manner in which the business is car-

ried on and from the conditions of the ways, works and machinery, if he is of sufficient capacity to understand and appreciate them." In *Rooney* v. *Sewall, &c., Cordage Co.*, 161 Mass. 153 it was said (p. 159) : "When the plaintiff entered the defendant's service, he impliedly agreed to assume all the obvious risks of the business, including the risk of injury from the kind of machinery then openly used. It is not material whether he examined the machinery before making the contract or not. He could look at it if he chose, or he could say, ' I do not care to examine it; I will agree to work in this mill, and I am willing to take my risk in regard to that.' In either case, he would be held to contract in reference to the arrangement and kind of machinery then regularly in use by his employer, so far as these things are open and obvious, so that they could be readily ascertained by such examination and inquiry as one would be expected to make if he wished to know the nature and perils of the service in which he was about to engage."

Some instances of the application of the rule may be cited. The employee was not cautioned against the danger in *Coolbroth* v. *Maine Central R. R. Co.*, supra, nor in *Judkins* v. *Same*, supra; yet in each case he was presumed to know it. In *Rooney* v. *Sewall, &c., Cordage Co.*, supra, the absence of boxing about the machine and the absence of warning to the employee were held not to transfer the risk to the employer. In *Downey* v. *Sawyer*, 157 Mass. 418, a boy of sixteen was held to have assumed without notice to him the risk attending his working near open gears in plain sight, and which confessedly might have been made less dangerous by guards. In *Gilbert* v. *Guild*, 144 Mass. 601, the rule was similarly applied to a boy of nineteen. In *Stuart* v. *West End Street Railway Co.*, 163 Mass. 391, a young man of twenty was set at work feeding hay into a hay cutter, though that was not his regular work. No warning or instruction was given him as to the danger. Held that the danger was so obvious that he must be presumed to have understood it. The court said (p. 393): "Where the elements of the danger are obvious to a person of average intelligence using due care, it would be unreasonable to require an employer to warn his employee to avoid dangers which

ordinary prudence ought to make him avoid without warning. The mere fact that he cannot tell the exact degree of the danger, if the nature and character of it can easily be seen, is not enough to require warning and instruction to a man of full age and average intelligence. Something may properly be left to the instinct of self-preservation, and to the exercise of the ordinary faculties which every man should use when his safety is known to be involved."

. In *Ruchinsky* v. *French*, 168 Mass. 68, a woman of thirty, though unfamiliar with machinery, was held to know without instruction or warning the danger of getting her hand in unguarded cog wheels. In *Wilson* v. *Mass. Cotton Mills*, 169 Mass. 67, a young man, who had worked upon a hoisting machine, the gears of which were covered, was set to work without warning upon a similar machine the gears of which were not covered but exposed. After some hours he was injured by his hand catching in the cog gear. Held that he must be presumed to have known so obvious a danger. In *Williams* v. *Churchill*, 137 Mass. 243, a boy of 19 unused to ropes was not told of the danger of getting entangled in the loose end of a bow line he was making fast. Held that he must be presumed to know of that danger.

In considering whether the circumstances of this case bring it within the rule above stated and illustrated, we may lay aside the numerous judicial decisions in cases where the employee was injured through some structural weakness, some decay, some break or want of repair in the machinery or appliances, or through some hidden danger in their operation. In this case there was no weakness, no decay, no break, no want of repair, no hidden danger in the operation. The machine though crude was stout and serviceable. In all its parts it was strong enough for its work and in every respect was as strong and safe as it appeared to be. The mechanism was all exposed, and its operation was visible to the most casual looker-on. The danger from which the injury resulted, that of the sticks of wood slipping from the hooks, especially if not evenly laid on them in the first instance, would be appreciated at a glance with a moment's reflection. The condition of the

wood with its snow, frost or ice,—its length compared with the distance apart of the hooks or arms supporting it,—the mode of putting it on the hooks,—all rendered it apparent that there was danger of the sticks falling at times, especially if the employees were not careful to place the sticks evenly on the hooks at the start. The risk was certainly one ordinarily attending the operation of the machine by the average employee.

Again, the risk was so patent that knowledge and even full appreciation of it could have been avoided only through gross incapacity or inattention on the part of the employee. The deceased was twenty-eight years old, and so far as the case shows, must be presumed to have possessed average intelligence and mental capacity. He had lived in Madison several years. He had worked off and on at this same machine for two weeks or more. He may be assumed to have had the common knowledge of the slipperiness of round sticks of wood exposed to the frosts and storms of March. He must have known, had he thought about it at all, that such sticks four feet long placed by ordinary workmen on such arms and lifted thirty-eight feet were liable to slip off while ascending. We think he must be presumed to have known and appreciated a risk so incident and obvious. We find nothing in the evidence to rebut that presumption, except the fact that he did encounter the risk and it went against him. That fact however is manifestly insufficient. To hold that he did not see and appreciate the risk of injury he incurred by getting under such a stick, in such circumstances, is to hold that he was too unthinking and inattentive to be in the exercise of due care. In either alternative there can be no recovery.

*Motion sustained.   Verdict set aside.*