ELIZABETH GOODWIN, ADMX. *v.* GEORGE A. GASTON ET AL., RECEIVERS OF CENTRAL VERMONT RY. CO.

November Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed May 5, 1931.

358

*J. W. Redmond* and *Horace H. Powers* for the defendant.

*Theriault & Hunt* for the plaintiff.

MOULTON, J. This is an action under G. L. 3314 and 3315 to recover for the death of the plaintiff's intestate. The verdict was for the plaintiff, and the defendants excepted.

The accident took place upon a grade crossing of the defendant's railway. The negligence alleged was the failure to blow the whistle or ring the bell and the operation of the train at an excessive rate of speed.

At the close of all the evidence the defendants moved for a directed verdict, the grounds being that the decedent was guilty of contributory negligence and that he assumed the risk. The motion was denied and the defendants excepted.

Taken most favorably for the plaintiff the evidence tended to show the following facts:—The decedent was 41 years of age. He was engaged in the business of peddling meat and provisions, using for this purpose an automobile truck with a meat box built upon it. Among his customers was a family named Farr, who lived in a house situated just west of the main line of the defendant's railway. The track runs parallel with the highway and between it and the house, and a private road extends from the highway 120 feet westward to the track and across it to the Farr dooryard. This crossing is at grade and is known as Farr's crossing. It serves only the Farr house and premises. It is maintained by the defendants as are all the crossings over the railroad track whether public or private. After crossing the track, the road is approximately level for 10 feet, after which it ascends for 40 feet at an average grade of $11\frac{3}{4}\%$. There is a slight curve near the track and at the time of the accident the road was narrowed to some extent where it passed over a culvert at the foot of the grade. On the day of the accident the road was icy and covered with a light fall of snow. The weather was cold and clear.

The decedent had driven his truck westward from the highway over the private road and railroad crossing into the Farr dooryard. After selling some meat to Mrs. Farr, he turned his truck around, so that it faced eastward, and stopped it. As it then stood, the front of the truck was, according to a profile plan introduced in evidence by the plaintiff, 35 feet west of a point 3 feet west of the west rail of the track. The allowance of 3 feet was to provide for the overhang of a train passing over the crossing. The position of the decedent upon the seat of the truck was 7 feet behind the front bumper, so that he was then 42 feet from the point 3 feet west of the west rail, and approximately 47 feet from the center of the crossing. The railroad track approached the crossing from the south around a reverse curve and through a cut and on a slightly descending grade. The contour of the ground was such that the decedent, sitting in the place described, could have seen the upper and front part of a locomotive 260 feet south of the crossing. As

he approached the crossing, his view would improve, and when he was 30 feet from the west rail he could, according to photographs introduced by the defendants, have seen a locomotive 400 feet to the south. Certain photographs introduced by the plaintiff showed a view of the track for a less distance from approximately the same place, but these exhibits do not include the locomotive as shown by those of the defendants, which from its size and height is clearly visible from a point where the track itself cannot be seen. When the decedent was 30 feet from the west rail, the front of his truck would be 23 feet from it, and 20 feet from the safety point 3 feet west of it.

The decedent was conceded to be well acquainted with the crossing and the territory immediately surrounding it. He had been coming to the Farr house to sell provisions twice a week during the four years preceding the accident. His truck and its load weighed approximately 4,000 pounds. There were chains on the rear wheels.

After turning his truck, the decedent looked toward the south for about five seconds, and appeared to listen and then drove slowly down the incline toward the crossing. There was no evidence that at any time thereafter he looked or listened for an approaching train, or changed the speed at which he was driving, or attempted to stop, or turn out to one side or otherwise to save himself.

When the truck was upon the crossing it was struck by the regular north-bound milk train of the defendant's railroad, consisting of an engine, two vans, and 19 cars, running 39 minutes late, and, as appears by a fair construction of the record, at a speed of approximately 55 miles an hour. The decedent was fatally injured and died the next day.

The defendants insist that he was contributorily negligent as a matter of law, because he could have stopped or turned out to one side in time to have avoided the accident if he had continued to look and listen up to the point 30 feet from the west rail, when, the train would have been in sight, and within 400 feet of the crossing.

The plaintiff's answer to this is that the evidence tends to show that because of the icy condition of the roadway it was impossible for the decedent to stop the truck, once he had started, until he had passed over the crossing; that the speed of the train was such that it would have come in sight and be upon

the crossing when the decedent was so near the track that, even if he had discovered it at the earliest moment, he could not have saved himself; and that he could not have turned out to one side because of the proximity of a ditch on the west side of the track which extended back from it on the south side of the road 10½ feet and on the north side 8½ feet.

■■ One who approaches a railroad crossing at grade is required to look and listen for approaching trains, and, if necessary to enable him to listen effectively, to stop to listen. He must continue to look and listen as he approaches the track until the last moment when the discovery of the train will avail for his protection, and he is chargeable with such knowledge of the approach of the train as he may obtain by such a vigilant use of his senses as a prudent and careful man would make in the circumstances. If by the vigilant use of his sight and hearing, he can discover and avoid the danger and he omits such diligence, he is guilty of contributory negligence. *Harrington* v. *Rutland R. R. Co.,* 89 Vt. 112, 119, 94 Atl. 431, and cases cited. The burden of showing freedom from it is upon the plaintiff. *Shumm's Admx.* v. *Rutland R. R. Co.,* 81 Vt. 186, 192, 69 Atl. 945, 19 L. R. A. (N. S.) 973. But if by such use of his senses as a prudent man would make he cannot discover the peril in time to avoid it, he is not guilty of negligence that will bar his action, because the law does not require an impossibility or a useless precaution. *Lefebre's Admr.* v. *C. V. Ry. Co.,* 97 Vt. 342, 351, 123 Atl. 211. Negligence, in order to be contributory in a legal sense, must be part of the proximate cause of the accident. *Lefebre's Admr.* v. *C. V. Ry. Co., supra; Merrihew's Admr.* v. *Goodspeed,* 102 Vt. 206, 216, 147 Atl. 346, 66 A. L. R. 1109; *Round* v. *Pike,* 102 Vt. 324, 328, 148 Atl. 283; *LaMountain's Admx.* v. *Rutland R. R. Co.,* 93 Vt. 21, 24, 106 Atl. 517.

So we may now consider whether the decedent's failure to look and listen—for clearly the plaintiff has failed to discharge the burden of showing that he did so—was a part of the proximate cause, as a matter of law.

■■ There was no evidence that, if the road had not been icy, the decedent could not have stopped in time to avoid the accident, if he had seen the train when he was 30 feet from the west rail of the track. The only evidence as to the impossibility of stopping because of the slippery condition of the road came from Mr. Farr. This witness was not present at the time

of the accident, but he testified that he had often, in early winter, driven his automobile out of the yard when the road was icy as it was on the morning in question, and that his judgment, based upon his experience in so doing, was that the decedent could not have stopped before crossing the track, because the road was all ice, and that he would have slid upon the track, if he had applied his brakes and they were effective.

On cross-examination he testified that he had never tried to stop and could not do it; and that he never knew of anyone who had tried to do so, and could not; and that he never took any chances, and his judgment told him not to try to stop. He drove, it appeared, a Packard six automobile, which, he said, was a heavy car.

The testimony of this witness amounted to nothing more than his unsupported opinion that the decedent could not stop. It was not based upon his own experience, or upon his observation or knowledge of the experience of others, in attempting to do so. It did not even rise to the dignity of being an experiment. Nothing appeared as to the relative weights of the witness' Packard and the decedent's truck, or whether the former car was equipped with chains as was the latter. No question of speed was considered. It was, we think, so far conjectural as to come within the rule stated in *Wellman* v. *Wales*, 98 Vt. 437, 440, 129 Atl. 317, 319, that "evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise, or suspicion, is an insufficient foundation for a verdict." This evidence was not of such quantity and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the plaintiff who had the burden of proof on this issue. *Wellman* v. *Wales*, *supra*, page 448 of 98 Vt., 129 Atl. 317, and cases cited.

The claim of the plaintiff that the evidence tended to show that the speed at which the train was running was so great that the decedent would have been unable to avoid the accident after he had discovered it is based upon an elaborate table showing the relative distances of the train and the decedent from the place of collision, with the train proceeding at varying rates of speed. But in each case the speed of the truck is assumed to be 4 miles an hour, and this assumption is not warranted by the evidence. The only witness who saw the decedent driving toward the track was Mrs. Farr, and she testified that he "was

going kind of slow'' and ''went down slowly toward the crossing.'' It cannot be inferred from this testimony that he proceeded at the rate of 4 miles an hour, and this being so, the calculations of the respective distances based upon the comparative speeds of the train and the truck lose their value.

However, it appears by the table that at an assumed speed of 56 miles an hour the train would be 378 feet distant when the decedent, at an assumed speed of 4 miles an hour was 27 feet from the place of collision, by which we understand the center of the crossing is meant, for the evidence tended to show that that was where the truck was when it was hit. Allowing for one-half the width of the track, and bearing in mind that the decedent was seated at a point 7 feet behind the front bumper, this would bring the forward end of the truck 14 feet 8 in. from the point 3 feet west of the west rail, representing the overhang of the train. There was no evidence tending to show that the truck could not have been stopped within that distance if it were being driven at the speed assumed. Here, again, we think the plaintiff has failed to present a question for the jury.

In view of what we have said, it is unnecessary to consider whether the evidence tended to show that the decedent could not have turned out to one side and so saved himself.

Moreover, even if we should assume that there was evidence fairly and reasonably tending to support the plaintiff's claim as to impossibility of stopping the truck, the issue of the decedent's assumption of the risk in starting down the incline toward the crossing under the then existing conditions, would still be for consideration. And so, proceeding upon this theory we will give the matter attention.

Although the doctrine of assumption of risk, in its primary sense, applies only where there is a contractual relationship, such as that of master and servant, between the parties, in its broader aspect it applies where no contractual relationship exists. *Gover* v. *C. V. Ry. Co.*, 96 Vt. 208, 214, 118 Atl. 874; *Miner* v. *Conn. River R. R. Co.*, 153 Mass. 398, 402, 403, 26 N. E. 994. In the latter situation it is based upon the maxim ''volenti non fit injuria'' and is confined to cases where the injured person knew and appreciated the danger, and voluntarily, that is to say, of his own free will, put himself in the way of it. *Cole* v. *North Danville Co-op. Creamery Assn.*, 103 Vt. 32, 151

Atl. 568, 570; *Gover* v. *C. V. Ry. Co., supra; Lavelle's, Admr.* v. *C. V. Ry. Co.,* 94 Vt. 80, 84, 108 Atl. 918. The maxim, says Prof. Bohlen (Voluntary Assumption of Risk, 20 Harvard Law Review, 14; Studies in the law of Torts, 441, 442), is a terse expression of the individualistic tendency of the common law, which does not assume to protect one from the effects of his own personality and from the consequences of his voluntary actions or of his careless misconduct; and the doctrine of the so-called voluntary assumption of risk is but one of the expressions of this fundamental idea.

██ ██ The evidence showed that the icy condition of the driveway existed every winter from December up to the middle of January. It was caused by water dripping from the eaves of the house, running down the grade and freezing there; glare ice being thus formed. As we have seen, for four years before the accident the decedent had been coming to the Farr house twice a week, and it was conceded that he was well acquainted with the crossing and the territory immediately surrounding it. It appeared in evidence that he had been there while the driveway was in a slippery condition and knew all about it. Indeed, he had driven over it only a few moments before he started upon the journey that ended in his death. So the ice upon the road must have been obvious to him. He was experienced in that particular place. It will be presumed, the contrary not appearing, that he was of average intelligence and mental capacity, and therefore that he had the common knowledge and the appreciation of the difficulty of stopping a heavily loaded truck on a slippery and descending grade. See *Jones* v. *Mfg. & Investment Co.,* 92 Me. 565, 43 Atl. 512, 513, 69 A. S. R. 535; *Wilson* v. *Mass. Cotton Mills,* 169 Mass. 67, 71, 47 N. E. 506. Under the circumstances shown by the evidence, we think that the decedent's act in starting toward the crossing was voluntary and the result of his intelligent choice, and that he reasonably elected to expose himself to the danger of an inability to stop. *Gover* v. *C. V. Ry. Co., supra,* 96 Vt. page 215, 118 Atl. 874.

Thus it appears that even though there existed an inability to stop the truck on discovering the approach of the train, the decedent would not have been relieved from responsibility, because in starting with knowledge of the conditions, he assumed the risk that he would be unable to do so. In principle the

situation is analogous to that presented in *Burleson* v. *Morrisville Lumber & Power Co.*, 86 Vt. 492, 497, 86 Atl. 745, wherein the plaintiff had voluntarily placed himself in a condition where the exercise of ordinary care was impossible, and was held not thereby to escape from liability for contributory negligence.

Taken as a whole, the evidence in this case was such that it would have been the duty of the trial court, in the exercise of a wise judicial discretion, to set aside the verdict upon motion being made; since the countervailing evidence so preponderated over that which tended to show liability on the part of the defendants that it would have been an abuse of discretion to refuse to do so. Therefore the motion for a directed verdict should have been granted. *Wellman* v. *Wales, supra,* 98 Vt. page 448, 129 Atl. 317; *Spaulding* v. *Mut. Life Ins. Co.*, 94 Vt. 42, 57, 109 Atl. 22; *Neill* v. *Ward*, 103 Vt. 117, 153 Atl. 219, 238.

It is unnecessary to consider the other exceptions briefed by the defendants.

*Judgment reversed, and judgment for the defendants to recover their costs.*

## On Motion for Reargument.

Moulton, J. On leave, duly obtained, counsel for the plaintiff have filed a motion for reargument in this case, pending which the entry of judgment has been withheld.

In the brief filed in support of the motion, counsel have expressed their doubts as to the proper procedure in motions of this kind. An examination of the brief shows that, for the most part, these apprehensions are unfounded. The practice applicable to this situation is fully set forth, and the authorities collected, in *Ryan* v. *Orient Insurance Co.*, 96 Vt. 291, 304-306, 119 Atl. 423. In view, however, of the uncertainty which appears to exist among the members of the bar as evidenced in this and other instances, it seems advisable to recapitulate the principles involved.

Briefly stated, the office of a motion for reargument is to point out to the Court wherein it is claimed that it has misapprehended, or overlooked some point, whether of law or of fact, which was presented in the brief upon the argument of the case. New questions are not for consideration; nor are

those which have been argued and decided upon due consideration of the pertinent law and facts, appearing and pointed out in the record. Leave to file the motion is not equivalent to leave to reargue the case. If it is made to appear that the Court was in error in misapprehending or overlooking the matters specified in the motion, and a reargument is ordered, it is then the appropriate time to present the question whether such misapprehension or omission is of such a nature as to affect the decision already reached. In other words, the motion is preliminary, and its function is to make manifest the reason why a reargument should be granted without consideration of the question whether such reason would result in a contrary disposition of the case, although of course, it must appear that the claimed mistake is material and sufficiently serious to be likely to influence the outcome. Where a brief is filed, all that may properly appear therein is an enumeration of those parts of the brief on argument which are relied upon in support of the motion.

The first ground of the motion is stated to be that we appear "to have viewed the situation from the point of view of the event as it happened, rather than from the point of view of a reasonably prudent man situated as was plaintiff's decedent." This does not point out specifically the evidence which it is claimed we have overlooked, and so is too general for consideration. *Ryan* v. *Orient Ins. Co., supra; Wilson* v. *Barrows,* 96 Vt. 344, 346, 119 Atl. 422. The shortage in the motion cannot be aided by what appears in the brief. *Powell* v. *Merrill,* 92 Vt. 125, 131, 103 Atl. 259.

The second ground is that "in stating the evidence the court has not done so in the light most favorable to the plaintiff"; and thereunder it is said that we have failed to mention the facts that at the crossing the east rail is higher than the west rail, as bearing upon the speed and care and attention required of decedent in operating his truck; that because of the curve and narrowing of the road, one driving down to the crossing has to watch out that his rear wheels do not leave the road at the culvert, as bearing upon the speed and care and attention required; that the decedent not only looked, but listened, before starting towards the track; and that the plaintiff's evidence tended to show an entire absence of warning of the approach of the train. But the plaintiff may be assured that

each of these circumstances was noted and given careful con‑ sideration in the preparation of the opinion.

 Another complaint, under the same ground, is that we have stated the speed of the train to be approximately 55 miles an hour, whereas one witness, called by the plaintiff, testi‑ fied that, at bridge 59, .27 of a mile south of Farr's crossing, the speed was ''about a mile a minute,'' This taken in connec‑ tion with the fact that the track was on a descending grade, would, it is claimed, justify a finding that the speed at the crossing was more than 60 miles an hour. What is said in the opinion is that by a fair construction of the record the speed was approximately 55 miles an hour, and in making this asser‑ tion the testimony of the witness as to the speed at bridge 59 did not pass unnoticed. The witness was in the highway near the bridge, about 50 feet from the track when the train passed by. Although he first testified that the speed was about a mile a minute, later in his direct examination he said that it was between 55 and 60 miles an hour. Indeed the plaintiff's brief contains the statement that the train covered the distance be‑ tween Riverton station and the crossing at a speed of nearly 55 miles an hour. We adopted the plaintiff's computation, by which this result was reached in making the statement to which objection is made. Riverton station is 2¾ miles south of the crossing. The train passed it at 11:17 A.M. The plaintiff's evidence tended to show that the accident occurred at about 11.20, and these times are used in the plaintiff's brief as the basis for her claim as to the speed. Thus, taking the evidence most favorably for the plaintiff, the train covered the distance of 2¾ miles in 3 minutes, or at a rate of almost exactly 55 miles an hour. As against this computation the rather uncertain opinion of the witness above mentioned is not, we think, of sufficient weight to justify a contrary finding.

Under the third ground of the motion it is claimed that we have overlooked the point made in oral argument that the propriety of the place chosen by the decedent for observation was in dispute, and that therefore the question whether he used due diligence was for the jury. We held in the opinion that it is the duty of one approaching a railroad crossing to con‑ tinue to look and listen as he approaches the track until the last moment when the discovery of the train will avail for his protection. The evidence did not show that the decedent did

this, however attentively he may have looked and listened before he started toward the crossing.

The fourth and fifth grounds of the motion amount to nothing more than the presentation of matters which have already received our careful consideration and have been decided. The appropriate time for arguing them has passed. *McAllister* v. *Benjamin*, 96 Vt. 475, 500, 121 Atl. 263.

█ The sixth ground is that the statement that there was no evidence tending to show that the decedent's truck could not have been stopped within a distance of 14 feet and 8 inches from the point 3 feet west of the west rail, if it were being driven at an assumed speed of 4 miles an hour, was unwarranted. A reference to the opinion will show that we held that there was no evidential basis for the claim that the speed was four miles an hour and that therefore the computation of distances based thereon was valueless. In making the statement referred to we were proceeding, for purposes of argument only, and to show that the plaintiff's computation would be unavailing even if it were correct, upon the assumption that this was the speed. Since this assumption is unfounded, it is impossible to see how the mistake, if there has been one, is material. It is unnecessary to say anything more concerning this ground of the motion, but since the motion refers to certain matters which, it is claimed, we have omitted to consider in reaching the conclusion as to the absence of evidence of decedent's inability to stop within the distance specified, we give it further attention. It is claimed that the testimony of the witness Farr was more than his unsupported opinion. Again, this is asking us to reconsider a point already fully presented, considered, and decided. When we held that the testimony of this witness that in his opinion the decedent could not have stopped the truck before reaching the crossing was so far conjectural as to be an insufficient foundation for a verdict, we took into consideration not only that he had never tried to stop his own car under like circumstances, nor seen anyone else try to stop, and that the weight and equipment of the decedent's truck and the witness' Packard were not shown to be the same, but also the witness' experience and knowledge of the conditions, and the fact that his wife had gone ahead to the crossing to warn him of any approaching train, when there was ice upon the driveway. Nor does the

common knowledge that it is difficult to stop a heavily loaded truck on a slippery and descending grade affect our conclusion.

 It is claimed further that we have overlooked the fact that the jury viewed the premises. The brief merely repeats this statement, but does not point out where the matter was mentioned in the brief on argument. Hence, it is not for consideration. *Ryan* v. *Orient Ins. Co., supra; Town of West Rutland* v. *Rutland Railway, Light & Power Co.,* 96 Vt. 413, 424, 121 Atl. 755. An examination of the latter brief fails to reveal that it was relied upon, and for this reason also it is unavailing. *Ryan* v. *Orient Ins. Co., supra; Shortsleeves* v. *Troville,* 95 Vt. 468, 474, 117 Atl. 819; *City of St. Albans* v. *Avery,* 95 Vt. 249, 265, 266, 114 Atl. 31. Counsel for the plaintiff say that they did not reasonably anticipate that Farr's testimony would be held to be insufficient evidence of decedent's inability to stop, because unsupported and therefore had no occasion to suggest the present point. But this testimony was quoted and its probative value denied by the defendants in their reply brief on argument. There was therefore occasion and ample opportunity to raise the point at the hearing, and under the general rule it cannot be made the basis of a reargument. *Spaulding* v. *Mut. Life Ins. Co.,* 94 Vt. 42, 54, 109 Atl. 22.; *Ryan* v. *Orient Ins. Co., supra.*

 In her brief on reargument, the plaintiff next presents the ninth ground of the motion, and we take it up in the same order. With this ground we also consider one of the specifications set up under the sixth ground, because of its similarity. It is claimed that we have overlooked the fact that the record does not raise the question that there was insufficient evidence of the decedent's freedom from contributory negligence, or of the impossibility of his stopping, and that we have therefore disposed of the case upon a ground not presented below. The plaintiff says that the defendant's motion for a verdict was based upon the alleged absence of any evidence whatever upon the point. The motion in question was as follows:

> "On all the evidence in the case, viewed in the light most favorable for the plaintiff, plaintiff's intestate, John O. Boyce, was guilty of contributory negligence."

We must construe the record to support the ruling below, if we can, but the construction must be a reasonable one. *But-*

*ton* v. *Knight,* 95 Vt. 381, 384, 115 Atl. 499. We take this motion to mean, not that there was no evidence whatever tending to show freedom from contributory negligence, but that there was no evidence fairly and reasonably tending to show it. A consideration of the motion necessarily involved the inquiry whether the evidence in the case was of such quantity and character as to justify the jury, acting reasonably, to predicate a verdict thereon in favor of the plaintiff who had the burden of the proof on this issue, under the rule stated in *Wellman* v. *Wales,* 98 Vt. 437, 448, 129 Atl. 317.

The seventh ground of the motion has to do with the question of assumption of risk. Apparently there is a misunderstanding by counsel on both sides regarding the scope of our holding upon this subject. We did not hold that the decedent assumed the risk of being struck by the train upon the crossing. The doctrine does not form a separate and independent ground for denying recovery to the plaintiff. It is to be considered in connection with the latter's claim that the decedent was free from contributory negligence as he approached the railroad track. The decedent was not excused from the obligation to exercise ordinary care by reason of any impossibility of stopping his truck once he had started, because he voluntarily and knowingly assumed the risk of being unable to do so.

Rightly understood, such is the scope and effect of our holding upon this subject. It may be that the discussion of the authorities in the opinion as originally written has operated to cause confusion, and so it has been revised and condensed and, it is hoped, clarified in this respect. The grounds for the motion for reargument, based upon the doctrine of assumption of risk are without force.

The plaintiff has also moved for a remand of the case, and in support of this motion has filed three affidavits concerning the slippery condition of the driveway, the opinion of witnesses concerning the impossibility of stopping an automobile of the approximate weight of the decedent's truck equipped with chains, and the speed with which he drove toward the track. It is not claimed that this testimony was not available at the trial—in fact two of the affiants are Mr. and Mrs. Farr. Moreover, it does not touch the question of the decedent's

knowledge of the conditions when he started toward the crossing.

*Motions for reargument and remand denied. Let full entry go down.*