AURELIA RASHAW *v.* CENTRAL VERMONT RAILWAY, INC.

February Term, 1935.

Present: POWERS, C. J., MOULTON, THOMPSON, and SHERBURNE, JJ., and BUTTLES, Supr. J.

Opinion filed May 7, 1935.

*Horace H. Powers* for the defendant.

*M. H. Alexander* for the plaintiff.

SHERBURNE, J. This is an action to recover for injuries received at the Welden Street crossing in the city of St. Albans on

the evening of May 15, 1933. Verdict and judgment were for the plaintiff. The only exception briefed is to the refusal of the court to grant defendant's motion for a directed verdict upon the ground of plaintiff's contributory negligence.

This crossing is in the railroad yard 500 to 600 feet south of the passenger station. There are twelve tracks which cross the highway substantially north and south. The main line is straight for over a mile toward the south, and is the seventh track from the west of the crossing, the direction from which the plaintiff drove upon the crossing, and about 100 feet therefrom. The train involved in the accident was the northbound passenger train due at 7.30 p.m., and consisted of a gas-electric unit and trailer. Its front end was striped. It was about the height of an ordinary freight car. It had a standard 100-watt electric locomotive headlight with reflector. It was traveling from 20 to 25 miles per hour. When the plaintiff drove upon the crossing there were box cars standing upon the side of the highway to her right and toward the south, and a box car or string of box cars was standing on the track next west of the main line not less than 100 feet south of the crossing. These cars were observed by her and obscured her view of the approaching train. There was a street light located 3 to 5 tracks west of the main line. It was dusk, but light enough to distinguish people. The weather was clear and warm.

For several years the defendant had kept a switchman at this crossing, whose duties were to tend the switches in that locality and to signal trains, and, when he had nothing else to do, to act as flagman to warn highway traffic. There was a shanty for his use located south of the crossing and east of the main line. He seldom flagged the northbound passenger train, as one of his duties was to throw a main-line switch, located 200 to 300 feet north of the crossing, after this train had passed, so as to let out the southbound passenger train waiting in the station and due to leave immediately after the other train had come in. On this evening the northbound train was a few minutes late. He saw its headlight on full when a mile away. As it approached he went to this switch so as to be ready to throw it after the train had passed. Although standing by the switch a little west of the direct glare of the headlight and looking at the train, he did not see plaintiff's automobile before and when it was hit be-

cause the light was so bright that it obscured the view of objects close to the train.

The plaintiff was familiar with the crossing. She had been frequently stopped there by a flagman, and was last stopped for this same train 4 or 5 days before. She was driving an Essex coupe, with both windows open, at about 10 miles per hour. She testified that as she drove upon the crossing from the west she depended somewhat upon a flagman to give a warning if there was a train approaching, but that she didn't see him and looked out; that she listeneded for a whistle or bell, and looked on both sides to see if a train was coming, and continued to look and listen, but saw and heard nothing of the train; that the train was 75 feet from her when she first saw it come out from behind the box car; that it was then so close to her that she couldn't get out of the way, so she stepped on the gas and couldn't quite get across before getting hit on the rear end of her car; and that she couldn't have stopped before getting in front of the train.

For the purposes of this case we assume that the defendant was negligent and that no bell nor whistle was sounded. We also disregard defendant's claim that the headlight must have lighted up the crossing so as to warn the plaintiff. It was not very dark and the street light may have been sufficiently strong to make the light upon the ground coming from the train undistinguishable.

Aside from any reliance for her safety that the plaintiff was entitled to and did place upon the absence of the flagman, about which we will speak later, it was the duty of the plaintiff as she neared the main line to look and listen for approaching trains. Duty required her to continue to look and listen as she approached the track until the last moment when the discovery of the train would have availed for her protection. She was chargeable with such knowledge of the approach of the train as she might have obtained by such vigilant use of her senses as a careful and prudent person would make in the circumstances. If by the vigilant use of her sight and hearing she might have discovered and avoided the danger, and she omitted such vigilance, she was guilty of contributory negligence. *Bates* v. *Rutland R. R. Co.,* 105 Vt. 394, 400, 165 Atl. 923; *Goodwin, Admx.* v. *Gaston,* 103 Vt. 357, 363, 154 Atl. 772; *Harrington* v. *Rutland R. R. Co.,* 89 Vt. 112, 118, 119, 94 Atl.

431. Although the failure of the defendant to sound the whistle or ring the bell did not excuse the plaintiff from the exercise of due care for her safety, it is a circumstance to be taken into consideration in determining whether she exercised the requisite care or not; for negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent person. *Bates* v. *Rutland R. R. Co., supra,* 105 Vt. 394, at page 401, 165 Atl. 923; *Lefebvre's Admr.* v. *Central Vermont Ry. Co.,* 97 Vt. 342, 350, 123 Atl. 211.

■ To the extent that she rightfully depended upon a flagman to give a warning, if there was a train approaching, she might rely upon his absence, within reasonable limits, as an assurance of safety, but this did not excuse her from using such precaution as a prudent person would use in like circumstances. *Gallagher* v. *Montpelier & Wells River R. R.,* 100 Vt. 299, 303, 137 Atl. 207, 52 A. L. R. 744. It does not appear, however, that she relied much, if any, upon the absence of a flagman. Further there was no evidence that a flagman was kept there at all times. The evidence only tends to show that a flagman was usually there. The switchman, who testified to his duties as we have stated, was plaintiff's witness as were also others who testified to his occasional absences when trains, usually passenger trains, were passing. For aught that appears the plaintiff herself may have seen trains pass there when no flagman was present.

■ The evidence was conclusive that when the train was 155 feet from the crossing its headlight would have come into the view of, and could have been seen past the north end of the box cars by, a person stationed upon the crossing 50 feet west of the main line. Just prior to the accident, at their relative rates of speed the train was never more than $2\frac{1}{2}$ times as far from the point of contact than she was. When she was 50 feet away the train was not over 125 feet away. When she was 40 feet away the train was not over 100 feet away. At each of these distances the headlight was clearly visible. She testified that she had good brakes on her car and had stopped it in its length when traveling 10 miles per hour.

Making allowances for the quiet operation of this type of train and for the necessity to look in both directions, we do not think that the evidence, viewed, as we have, in the light most favorable to the plaintiff, is of such quantity and character that reasonable minds might draw different conclusions, and we hold

that she was guilty of contributory negligence as a matter of law in failing to discover the train in time to avert the accident. Defendant's motion should have been granted.

*Judgment reversed, and judgment for the defendant to recover its costs.*