297 F.2d 570
 Burr ATKINSON, Jr., Appellant,
v.
William Scott ROTH and E. F. Mengle & Sons Trucking Company,
and Kerry Coal Company.
Howard JAMISON, Administrator of the Estate of William W.
Weishner, Deceased, Appellant,
v.
Burr ATKINSON, Jr. v. E. F. MENGLE & SONS TRUCKING COMPANY,
Kerry Coal Company and William Scott Roth, Third
Party Defendants.
Howard JAMISON, Administrator of the Estate of William W.
Weishner, Deceased, Appellant,
v.
E. F. MENGLE & SONS TRUCKING COMPANY, Kerry Coal Company and
William Scott Roth v. Burr ATKINSON, Jr., Third
Party Defendant.
Bernard WOJNAR, a Minor, by Anthony Wojnar, His Natural
Guardian, and Anthony Wojnar, His Parent, in His
Own Right, Appellants,
v.
Burr ATKINSON, Jr. v. E. F. MENGLE & SONS TRUCKING COMPANY,
Kerry Coal Company and William Scott Roth, Third
Party Defendants.
Thomas E. TAYLOR, Jr., Appellant,
v.
Burr ATKINSON, Jr. v. E. F. MENGLE & SONS TRUCKING COMPANY,
Kerry Coal Company and William Scott Roth, Third
Party Defendants.
Thomas ROBERTS, a Minor, by Victor I. Roberts, His Natural
Guardian, and Victor I. Roberts and Maureen A.
Roberts, His Parents, in Their Own
Right, Appellants,
v.
Burr ATKINSON, Jr. v. E. F. MENGLE & SONS TRUCKING COMPANY,
Kerry Coal Company and William Scott Roth, Third
Party Defendants.
Mary Dolores KORZI, Administratrix of the Estate of Thomas
Arthur Lorenc, Deceased, Appellant,
v.
E. F. MENGLE & SONS TRUCKING COMPANY and Kerry Coal Company
v. Burr ATKINSON, Jr., Third Party Defendant.
 Nos. 13549-13555.
 United States Court of Appeals Third Circuit.
 Argued June 23, 1961.
Decided Oct. 6, 1961, As amended on Denial of Rehearing Jan. 16, 1962.
 
 James Craig Kuhn, Jr., Pittsburgh, Pa. (Arnold D. Wilner, Wilner, Wilner & Kuhn, Pittsburgh, Pa., on the brief), for appellants Wojnar and others in Nos. 13552-13555.
 Wray G. Zelt, Jr., Washington, Pa. (Michael E. Kusturiss, Canonsberg, Pa., on the brief), for appellant Jamison in Nos. 13550 and 13551.
 John M. Feeney, Jr., Pittsburgh, Pa. (Gene K. Lynch, McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for appellant Atkinson in No. 13549.
 George Y. Meyer, Pittsburgh, Pa. (Donald W. Bebenek, Meyer, Darragh, Buckler & Bebenek, Pittsburgh, Pa., on the brief), for appellee Atkinson, in Nos. 13550-13555.
 Joseph W. Weis, Jr., Pittsburgh, Pa. (Weis & Weis, Pittsburgh, Pa., on the brief), for all appellees except Burr Atkinson, Jr.
 Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 These appeals are from judgments entered against the plaintiffs following the return by a jury of answers to special interrogatories,[1] with no general verdict.
 
 
 2
 Seven actions were instituted in the court below stating claims arising out of a collision between an automobile driven by one Atkinson and a tractor-trailer driven by one Roth. Atkinson had five passengers in his vehicle. There is no dispute that he and three of his passengers were injured, and two of his passengers died, in the accident. Separate actions were commenced by or on behalf of three passengers against Atkinson, who joined Roth and his alleged employers as third-party defendants. The administrator of the estate of a fourth passenger commenced two separate actions, one against Atkinson, who joined Roth and his alleged employers as third-party defendants, and the other against Roth and his alleged employers, who joined Atkinson as a third-party defendant. The administratrix of the estate of a fifth passenger commenced an action against Roth's alleged employers, who joined Atkinson as a third-party defendant. Atkinson sued Roth and his alleged employers, one of whom filed a counterclaim for damages to the tractor-trailer. On the motion of Roth and his alleged employers, all the actions were consolidated for trial, over the objection of Atkinson, qua plaintiff. It was agreed, however, that only the issue of liability should be tried.
 
 
 3
 The evidence with respect to the accident was as follows:
 
 
 4
 The accident occurred on Route 19, a two-lane highway, in the vicinity of Harlansburg, Pa., about 1:30 o'clock p.m., on January 25, 1958. It had snowed earlier in the day, but no snow had fallen within several hours prior to the accident. Snow was piled on the sides and the berms of the road on each side, and snow ans slush covered the center portion of the road. The center of the road was difficult to discern, and the snow on the sides of the road made it impossible to determine where the cement portion ended and the berm began.
 
 
 5
 Atkinson was driving in a northerly direction and Roth was approaching him in a southerly direction. On Atkinson's side, just south of the point of the collision, there was a roadside sign 'Pavement Narrows' to warn drivers proceeding north that the pavement ahead was not as wide as the pavement then being travelled.
 
 
 6
 Atkinson testified that as he approached the straightway of about 1300 feet, he saw Roth's vehicle coming toward him about 400 feet away, partly in his lane of travel. He said he had been travelling at about thirty-five miles per hour and when he saw the Roth vehicle he removed his foot from the accelerator. He moved to his right to make way for Roth and, not being able to see where the cement ended and the berm began, his right wheels, or one of them, sank in the berm and snow and caused his vehicle to slide or skid across the highway to the berm opposite. He testified that he was entirely on the berm of the opposite (Roth's) side of the road and stopped when Roth pulled to his right and struck him. Roth, on the other hand, testified that his vehicle was in the slush in his own lane and when Atkinson's vehicle was about 100 feet away it seemed to slide to its right and then came across the highway in front of him. He said that he pulled his vehicle to his right to avoid contact and immediately applied his brakes, but the two vehicles collided while they were both in motion, and after the impact his vehicle dragged the Atkinson vehicle in the direction that he was travelling. Roth admittedly could not tell where the middle of the roadway was, but nevertheless insisted that he could not have been travelling in the other lane. He asserted that his speed was about thirty-five miles per hour.
 
 
 7
 There was testimony from two surviving passengers which corroborated Atkinson as to his speed[2] and the location of Roth's vehicle in the Atkinson lane. There was testimony from other drivers that Atkinson was travelling at about fifty miles per hour, and that Roth was travelling from forty to forty-five miles per hour. Neither vehicle was equipped with chains, although chains were available to Roth. The tractor-trailer was equipped with a switch marked 'Slippery roads and dry roads', which, if placed on the 'Slippery roads' position, took the brakes off the front wheels to prevent swerving. Roth did not recall the position of the seitch at the time of the collision.
 
 
 8
 In the trial of the case, Atkinson, as plaintiff, contended that the collision was solely the result of Roth's negligence in operating his vehicle over the center line of his lane and forcing him off the road, with the result that he skidded across the road. Moreover, he contended that after the skid, Roth had adequate room to pass, since he had come to rest on the berm off the road to Roth's right. Roth contended that Atkinson skidded across the road as a result of his own negligence, and thus he, Roth, was presented with an emergency. However, Roth further argued that if he was negligent, so also was Atkinson. The remaining plaintiffs, or course, contended that the accident was the result of the negligence of either of both operators.
 
 
 9
 The district court interpreted the jury's answers to the special interrogatories as finding 'neither driver guilty of negligence and both drivers guilty of contributory negligence', and 'in accordance with the jury's answers' entered judgments against all claimants.
 
 
 10
 Each of the plaintiffs filed appropriate motions, contending, variously, that judgments should have been entered in their favor, that the jury's answers to the special interrogatories were 'inconsistent and meaningless', that the court erred in its charge, that the charge and the interrogatories were inadequate and confusing, and that the 'verdict' was against the weight of the evidence. In denying the motions the district court concluded that it had correctly stated the law in its charge, but in any event no timely objections to the charge, except in one instance, or to the interrogatories, had been made. The district court concluded that it did not err in permitting the jury to find that both operators were presented with a sudden emergency, but in any event this alternative had been rejected as evidenced by the finding that each driver was contributorily negligent. It rejected the contention that the 'verdict' was against the weight of the evidence on the ground that this called for the exercise of the court's discretion; and, in its opinion the case was fairly tried and it did not feel free to re-weigh the evidence.
 
 
 11
 We are of the opinion that the judgments entered below should not be permitted to stand.
 
 
 12
 In McNello v. John B. Kelly, Inc., 3 Cir., 1960, 283 F.2d 96, 101, we had occasion to point out the fundamental necessity of relating the law to the evidence in the court's instructions to the jury in a negligence case. However precisely correct instructions concerning the law may be, we may not lose sight of the fact that the objective of the charge is to clarify the issues in the light of the evidence 'to provide aid and guidance for the jury'. See De Angelis v. Burns, 1961, 404 Pa. 230, 171 A.2d 762, 764. If it is to be assumed that jurors have ordinary intelligence, it may not be assumed that they are students of the law. The task of the jury, to apply the rules of law as given by the court below, certainly cannot be satisfactorily accomplished, as we pointed out in McNello, in the abstract. Viewed in perspective, it seems to us evident here that the legalistic charge on liability, and the restriction of the special interrogatories to fault in the accident, wound up, insofar as the jury is concerned, on the district court's evaluation of the answers to the interrogatories, in another collision between the two drivers with the passengers this time suffering the consequences of a miscarriage of justice. Cf. Hancock v. Moore, 1961, 404 Pa. 47, 171 A.2d 182. We find, as in McNello, that the jury here did not receive proper guidance in the application of the legalisms submitted to the interrogatories at hand.
 
 
 13
 The evidence in the case demonstrates that either driver was responsible, or both were. Indeed, neither contended below that the accident happened by reason of any factor other than the negligence of the other. The charge, to which objection was made, permitting thejury to find a sudden emergency as to both drivers was clearly contra-indicated. The finding of the jury that neither driver was guilty of negligence which was the proximate cause of the accident but that, in the terms of the interrogatories, the contributory negligence of each contributed to the accident, suggests, if it does not demand, the conclusion that the accident was caused by both drivers. Such a determination would be consistent with the confusing charge of the court on concurrent negligence:
 
 
 14
 'You are further instructed that when the negligent acts or omissions of two or more persons contribute concurrently and as proximate causes to the injury of another, each of such persons is liable. This is true regardless of the relative blame or fault of each.'[3]
 
 
 15
 which was immediately followed by a charge on contributory negligence:
 
 
 16
 'Even if you find that William Scott Roth or Burr Atkinson, Jr., as defendants or third-party defendants were not guilty of negligence which was the proximate cause of the accident, you might find that Mr. Roth or Mr. Atkinson failed to exercise such care as a reasonably prudent person would have exercised under the circumstances and that such lack of care contributed to the happening of the accident. If you find that either or both has been guilty of contributory negligence which in any degree contributed to the accident, you would answer the interrogatories accordingly.'[4]
 
 
 17
 The confusion in the use of the term 'contribute', the absence of any guidance based upon the evidence of the case, the precisely limited wording of the the broad wording of the special interrogatories the broad wordingof the special interrogatories Nos. 2 and 4, which led the jury to believe that it was deciding only whether the 'contributory negligence * * * contributed in any degree to the accident', certainly afforded the jury the choice of interpreting special interrogatories Nos. 2 and 4, as addressed to concurrent negligence, as well as to contributory negligence. Moreover, under the law of Pennsylvania, the finding that the negligence of neither driver alone brought about the accident, but that it was brought about by the concurrent negligence of both would render the drivers jointly and severally responsible. Holstein v. Kroger Grocery & Baking Co., 1943, 348 Pa. 183, 185-186, 34 A.2d 491; O'Malley v. Philadelphia R.T. Co., 1915, 248 Pa. 292, 93 A. 1014.
 
 
 18
 If the jury interpreted interrogatories Nos. 2 and 4 to relate only to contributory negligence, we should have to say, in the light of Holstein and 'O'Malley and in view of the record of the case, which would undoubtedly permit a finding of concurrent negligence, and in view of the charge on concurrent negligence, the submission of interrogatories Nos. 1 and 3, without explanation, was inadequate to cover the issues of the case. There should have been submitted interrogatories in clear language on the issue of concurrent negligence.
 
 
 19
 We are not unconcerned with the failure of counsel to perceive and bring to the attention of the court, on the record, such matter. But, the function of the trial judge necessarily extends beyond conclusive reliance upon counsel. It is the administration of justice with which we are dealing, and this includes the prevention of a miscarriage of justice.
 
 
 20
 We note, too, that the court below did not include in its charge to the jury a direction that the negligence ofAtkinson could not be imputed to his passengers. The failure to give such instruction is basic error in Pennsylvania. Cobb v. Chubeck, 1960, 399 Pa. 201, 160 A.2d 207. While the jury here was not asked to return a general verdict, we cannot say that a complete statement of the legal consequences of the relationship between driver and passenger would not have had significance to the jury and assisted them, or brought direction and understanding, in answering the interrogatories.
 
 
 21
 Finally, we are of the opinion that the motion to consolidate, to which Atkinson as plaintiff objected, should not have been granted to the extent that it resulted in the consolidation for trial of Atkinson's claim against Roth and his alleged employers and the counterclaim against him with the claims arising out of the injury to, and death of, the passengers. We believe such consolidation in this instance burdened the parties, the court and the jury with an overcomplication of issues and necessary instructions. The difficulty engendered was noticed by the Supreme Court of Pennsylvania in Crane v. Neal, 1957, 389 Pa. 329, in a footnote at page 332, 132 A.2d 675. We have already noted that Atkinson was the defendant in four suits brought by or on behalf of passengers or their personal representatives. In three of these actions complaints were subsequently filed againstRoth and his alleged employers, by the plaintiffs and accordingly, in order to recover, the plaintiffs had to prove that either Atkinson alone, or Atkinson and Roth were concurrently responsible. In two of the other actions, Roth or his alleged employers were the original defendants. The plaintiffs in those cases had to prove that Roth alone, or Roth and Atkinson were concurrently responsible. This results from the fact that the mere assertion of a third-party claim does not permit the original plaintiff to recover from the third-party defendant. All of the suits stating claims by passengers or their representatives, however, could proceed without conflict. But Atkinson as a plaintiff was obliged to keep his case free of contributory negligence, and in this he was at cross purposes with the other plaintiffs. The presence of Atkinson, qua defendant, in the same trial with Atkinson, qua plaintiff, emphasizes the conflict. In these circumstances, proper concern for due administration of justice seems to indicate to us the wisdom of avoiding another trial in which Atkinson appears as a plaintiff along with his passengers or their representatives.
 
 
 22
 As noted in footnote 1, Interrogatory No. 5 and the jury's answer thereto, read as follows: 'Was William Scott Roth, at the time of the accident of January 25, 1958, the agent or employee of E. F. Mengle & Sons? Answer: No.' Upon review of the record we are of the opinion that it sustains the jury's answer to Interrogatory No. 5.
 
 
 23
 For the reasons stated the judgments entered below in favor of E. F. Mengle & Sons Trucking Company will be affirmed and the other judgments will be reversed and the causes remanded for further proceedings not inconsistent herewith.
 
 
 24
 It is further Ordered that the judgments of this Court filed October 6, 1961 be and they hereby are vacated.
 
 
 
 [1]
 The special interrogatories and instructions accompanying them and the jury's answers are as follows:
 
 
 [1]
 Was the defendant Burr Atkinson, Jr. guilty of negligence which was a proximate cause of the accident of January 25, 1958? Answer: No
 This interrogatory to be answered 'Yes' or 'No'. If you answer interrogatory No. 1 'Yes', you will not answer interrogatory No. 2. If you answer interrogatory No. 1 'No', you will then consider interrogatory No. 2.
 
 
 [2]
 Was the plaintiff Burr Atkinson, Jr. guilty of contributory negligence, which in any degree contributed to the accident? Answer: Yes
 This interrogatory to be answered 'Yes' or 'No'.
 
 
 [3]
 Was the defendant, William Scott Roth, guilty of negligence which was a proximate cause of the accident ofJanuary 25, 1958? Answer: No
 This interrogatory to be answered 'Yes' or 'No'.
 If you answer interrogatory No. 3 'Yes', you will not answer interrogatory No. 4. If you answer interrogatory No. 3 'No', you will then consider interrogatory No. 4,
 
 
 [4]
 Was William Scott Roth guilty of contributory negligence which in any degree contributed to the accident? Answer: Yes
 This interrogatory to be answered 'Yes' or 'No'.
 If your answers to interrogatories Nos. 3 and 4 are both 'No', you will not answer interrogatory No. 5. If, however, your answer to either interrogatory No. 3 or interrogatory No. 4 is 'Yes', you will answer interrogatory No. 5.
 
 
 [5]
 Was William Scott Roth, at the time of the accident of January 25, 1958, the agent or employee of E. F. Mengle & Sons? Answer: No
 This interrogatory to be answered 'Yes' or 'No'.
 
 
 [2]
 However, they had previously made statements that his speed was forty to forty-five miles per hour at the time involved
 
 
 [3]
 If the situation was one of concurrent negligence, a charge referring to proximate cause would be unnecessary and irrelevant. Holstein v. Kroger Grocery & Baking Co., 1943, 348 Pa. 183, 34 A.2d 491. Compare our decision in McNello v. John B. Kelly, Inc., 3 Cir., 1960, 283 F.2d 96, 101. Here, the reference to proximate cause additionally served to confuse
 
 
 [4]
 The rule in Pennsylvania is that a claimant is guilty of contributory negligence, and may not recover, if his negligence contributes in any degree, however slight, to the injury. Crane v. Neal, 1957, 389 Pa. 329, 132 A.2d 675