## Starr's Transportation, Inc. v. St. Johnsbury & Lamoille County Railroad

[189 A.2d 525]

January Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 6, 1963

*Fitts & Olson* for the plaintiff.

*Downs & Rachlin* for the defendant.

**Barney, J.** A little after nine o'clock on the morning of March 4, 1961, Floyd Brown was driving a tractor-trailer truck loaded with sixteen tons of lime through Sheldon Junction when he collided with a freight train at a railroad crossing. The truck was owned by the plaintiff and the train was being operated by the defendant over its own tracks. The highway was macadam surfaced and dry; it was daylight and visibility was normal. In attempting to avoid the collision, Brown turned his vehicle to his right down the railroad right-of-way, with the result that the left front of the tractor struck the lead engine about midway in a sort of sideswipe contact. The tractor-trailer unit was demolished and the engines of the train were derailed. Fortunately, Brown sustained only a bruised hip and a cut finger, and no one else was hurt.

The truck owner brought this action against the railroad, claiming the accident came about only because of negligence on the part of the railroad. At the close of the plaintiff's evidence, the trial court directed a verdict in favor of the defendant. The plaintiff is here asking for a review of that ruling. It is also raising a question as to the propriety of the trial court's exclusion of certain evidence relating to the accident history of this crossing, and as to the court's rejection of the doctrine of last clear chance.

The defendant urges that the contributory negligence of the plaintiff's driver supports the directed verdict irrespective of any issue of the defendant's negligence. Although the question raised is one of law, the decision below cannot withstand the plaintiff's challenge unless the factual circumstances are adequate to justify the ruling. A review of the evidence is required.

The truck was headed generally eastward on Route 105, coming from Swanton via St. Albans and bound for North Troy. Approaching the area from the west, the driver first encountered the Central Vermont Railway crossing, then crossed the Mississquoi River via a relatively long, open bridge and continued straight ahead on into Sheldon Junction. The St. Johnsbury & Lamoille County Railroad tracks run approximately parallel to the river in this area, and the crossing involved here was some seven hundred feet ahead and in view of the driver as he left the bridge. The countryside between the river and the railroad was level and open, except for an occasional

tree or building, whether looking northerly to the driver's left, or southerly to his right. Except as it passed behind buildings, the slightly elevated railroad roadbed itself was visible to the right and left from the end of the bridge. About three hundred and sixty feet from the end of the bridge a local road intersected Route 105 at right angles. From this point there is visible ahead some one hundred and twenty feet a round sign indicating a railroad crossing beyond. The crossing itself is also visible a little over two hundred feet past the sign, as is the familiar white warning board or cross-buck sign located some twenty or thirty feet beyond the crossing itself. The highway begins a gradual swing to the right or south, just before the crossing, but visibility from the bridge to beyond the crossing is not affected.

Once the town highway intersection is crossed, two buildings on the left of Route 105 obstruct the view of the track leading to the crossing from the left or north. It is from this direction that the train involved came. The building nearer the crossing is a filling station about one hundred feet westerly of the railway roadbed and about sixty feet back from the highway. At the time of the accident a truck stood near the filling station on its easterly side, interfering with the view up the track to the north.

The train was a twelve-car freight, loaded and heavy, powered by two diesel engine units and about five hundred feet long. At the time of the collision the train had slowed from about twenty-five miles per hour to about fifteen miles per hour, in preparation for a stop at the intersection of the defendant's track with that of the Central Vermont Railway some eight hundred feet away. The train and truck both moved down the right-of-way some one hundred and fifty feet beyond the point of impact.

The defendant's rear-end brakeman was called by the plaintiff. He testified that he saw the plaintiff's truck as it came off the bridge toward the crossing. The witness estimated that he had the truck in view for some three or four seconds until he lost sight of it because of the intervening house and filling station. The truck was some four hundred feet from the crossing when it passed from the witness' view. He estimated its speed to be fifty miles per hour. He placed the head end of the train about one hundred and sixty feet from the crossing when he saw the truck. He also estimated that the

stopping distance of a train loaded as this one was at that time to be two hundred feet. His observations were made from his position in the cupola of the caboose at the rear of the train.

A Sheldon Junction resident also testified. He heard the approaching train sounding its horn at a point he estimated to be six hundred feet from the crossing. At that time he left the yard of his home some distance easterly of the crossing and drove through his field onto the highway at the easterly side of the crossing. He said that when he arrived there, he saw nothing approaching the crossing except the train itself, its whistle sounding intermittently. He said that he waited at the crossing some fifteen seconds for the train to pass when he heard a terrific crash. The train then came to a stop and he crawled under the train to discover that the plaintiff's truck had struck the engine.

Floyd Brown testified that he had twenty-six years of truck driving experience and was completely familiar with the operation, control and stopping distance of the tractor-trailer unit he was operating at the time of the accident. The complete rig, with its sixteen ton load of lime, weighed about 49,000 pounds. He had made this same run over this same route somewhere between seven and nine previous times.

On the day of the accident he stated that he came off the bridge at a speed of between thirty and forty miles per hour. He let up on his accelerator for the highway intersection, and approached the crossing at about thirty miles per hour. He said that he noticed the railroad crossing sign when he was passing through the highway intersection. He looked to his right and saw no train, looked to his left and found his view blocked by the house, the filling station and a truck in the filling station yard. He continued on at a speed of about thirty miles an hour to a point about forty feet from the crossing. He then saw the train and stated that he knew he could not stop in that distance. It was then that he applied his brakes, and at the same time pulled the truck sharply right, resulting in the sideswipe collision. He testified that the windows were closed in his truck cab and he heard no horn, whistle or other train warning. He also commented that he had not previously seen any trains on this track and did not think it was travelled.

It was the duty of the driver to look and listen for approaching trains as he neared the crossing until the last moment when the discovery of the train would have availed for his protection. He was chargeable with such knowledge of the approach of the train as he might have obtained by such vigilant use of his senses as a careful and prudent person would make in such circumstances. Where his vision was obstructed, he should have been especially vigilant as regards his hearing. If, by such vigilant use of his sight and hearing, he might have discovered and avoided the danger, and he omitted such vigilance, he was guilty of contributory negligence. *Bates* v. *Rutland Railroad Co.,* 105 Vt. 394, 400, 165 Atl. 923. Any shortage in the defendant's performance of its statutory duty to sound its whistle or bell would not excuse the driver from his duty to exercise due care for his own safety. However, such shortage is a circumstance to be taken into consideration in determining whether he exercised the requisite care or not; for negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent person. *Rashaw* v. *Central Vermont Ry., Inc.,* 107 Vt. 316, 320, 178 Atl. 712.

The testimony and the exhibits in the case make it apparent that, at the time the truck came off the bridge and was seen by the defendant's brakeman, a part or all of the five hundred foot train was within the range of the driver's vision, had he looked. Under 30 V.S.A. §1374(a) the defendant's train was bound to commence sounding its whistle or horn at least eighty rods from the crossing and keep blowing it until the engine has crossed the road. The evidence in the case at the time the verdict was directed suggests that the horn of the train was not sounded as early or as frequently as the statute requires, and the plaintiff is entitled to this view of the evidence. But this is of little benefit here. When the truck reached the area where the driver's view to the north was obstructed, it became his duty to make vigilant use of his hearing. Evidence introduced by the plaintiff made it clear that he did not do so. The driver stated he heard no horn, yet another witness put on by the plaintiff testified that he heard the horn blown more than once. Since the driver must be presumed to have heard whatever there was to be heard, if he listened, his failure to hear the horn indicates that he

did not exercise his hearing with reasonable diligence. *Kremer* v. *Fortin,* 119 Vt. 1, 5, 117 A.2d 245.

■■ Most serious of all is the handicap he put on his ability to save himself by vigilant use of his vision. He chose to drive through the area of limited visibility at a speed which was bound to make it impossible for him to stop his loaded truck in time to avoid an accident should a train come into view in the limited range of his vision up the track to the north. His own testimony was that when the train first came into view he was already too close to the crossing to stop. This situation resulted solely and directly from the speed at which he approached the crossing. The limited nature of his view up the track was apparent from his situation on the highway, particularly since he had already made the trip several times. He was aware that he was approaching a railroad crossing, having just observed the warning sign. In fact, the very maintenance of a railroad across a public highway is notice to all the world that trains are likely to be run thereon; the traveler cannot escape the duty of due care by assuming the track will be clear. *Gallagher* v. *Montpelier & Wells River R.R.,* 100 Vt. 299, 303, 137 Atl. 207, 52 A.L.R. 744. In travelling toward the crossing at the speed he did, the driver created his own inability to stop on discovery of the approaching train. He thereby voluntarily placed himself in a position from which he could not, by the exercise of ordinary care, extricate himself. *Goodwin, Admx.* v. *Gaston,* 103 Vt. 357, 367, 154 Atl. 772. The plaintiff's driver was negligent as a matter of law.

■ The plaintiff urges that even if the driver was negligent, the doctrine of last clear chance applied so as to bar the directed verdict. One of the essential elements of the doctrine is that the defendant must discover the plaintiff in a position of peril at a point where the defendant can avert the accident but the plaintiff cannot, the perilous situation arising from negligence on the part of both parties. *Durkee* v. *Delaware & Hudson R.R. Co.,* 106 Vt. 488, 493, 174 Atl. 921. When the truck passed from the brakeman's view, it was in no peril; when it arrived at the crossing there was nothing the defendant's train crew could do to prevent the accident. The doctrine is not applicable.

The remaining claim of error relates to a claim of negligence on the part of the defendant with respect to acting on the accident history

of the crossing. Since negligence attributable to the plaintiff bars its recovery, this issue need not be considered.

*Judgment affirmed.*