## Ricky L. Mobbs, et al. v. Central Vermont Railway, Inc.

[583 A.2d 566]

No. 86-255

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed September 28, 1990

*Kohn & Rath,* Hinesburg, for Plaintiffs-Appellants.

*Robert B. Hemley* and *Dennis R. Pearson* of *Gravel & Shea,* Burlington, for Defendant-Appellee.

**Gibson, J.** This appeal stems from a fatal train-car collision in which three of the car's occupants were killed and the other two seriously injured. Plaintiffs, the two surviving passengers and the estates of two of the decedents, appeal a jury verdict

finding that defendant Central Vermont Railway, Inc. (CVR) was negligent but that CVR's negligence was not a proximate cause of plaintiffs' injuries. We affirm.

## I.

### A.

At approximately noon on February 4, 1978, David Mobbs drove his car into the path of an oncoming train at the Jonesville railway crossing. Mr. Mobbs, his wife, Sandra, and their two-month-old baby, Danielle, were killed, while the couple's two-year-old son, Christopher, and Mr. Mobbs' sixteen-year-old brother, Ricky, survived. Apparently, Mr. Mobbs was unaware of the oncoming train despite the fact that he was familiar with the crossing, the red warning lights at the crossing were flashing, the warning bells were ringing, the train's horn had been blown according to regulations, and the train's headlights were on. There was no gate at the crossing. Mr. Mobbs had turned off Route 2 onto a smaller road and continued at a moderate speed for fifty feet until he reached the tracks where the train struck his car. The car windows were rolled up and the heater was turned on because it was very cold. The ground was snow-covered, the sky was clear, and the sun, being in its winter arc, was low in the southern sky, the direction in which the Mobbs' car was headed when it was struck.

### B.

Separate actions were filed in 1980 by or on behalf of the five occupants of the car. Despite plaintiffs' numerous objections, the four passenger cases were consolidated and then joined for trial with the driver's case. The two-week trial took place in October of 1985. At the close of plaintiffs' direct case, the trial court granted CVR's motion for a directed verdict in the case of Danielle Mobbs, based on its conclusion that the Wrongful Death Act did not contemplate recovery for pecuniary loss suffered by a sibling or for loss of "love and companionship" between siblings. Although the trial court incorrectly construed the statute as foreclosing recovery by Danielle's brother for pecuniary injuries, we affirmed the directed verdict because of the complete lack of evidence of any pecuniary injury suffered by

Danielle's brother as a result of Danielle's death. See *Mobbs v. Vermont Central Ry.*, 150 Vt. 311, 553 A.2d 1092 (1988).

At trial, the remaining four plaintiffs attempted to show that CVR was negligent in its operation of the train and in its failure to provide a gate and safer lights at the crossing. Defendant contended that the various safety devices provided at the crossing were adequate, and that the sole proximate cause of the accident was David Mobbs' negligence. After asking the court to reread instructions defining negligence and proximate cause, the jury, by general verdict with interrogatories, concluded that CVR was negligent but that CVR's negligence was not a proximate cause of plaintiffs' injuries. Plaintiffs appeal that jury verdict.

In a multifarious attack on the trial court proceedings, plaintiffs claim that the court erred in (1) joining the driver's case with the passengers' cases; (2) refusing to charge specifically that more than one proximate cause is possible; (3) giving a charge to the jury that, in effect, amounted to a directed verdict; (4) giving a charge which, read as a whole, misstated the law; (5) excluding opinion evidence that the use of gates would have prevented the accident; (6) prohibiting plaintiffs from presenting evidence of accidents at other crossings, while allowing CVR to present evidence of the accident history of the Jonesville crossing; (7) allowing evidence of the driver's failure to use a seat belt; (8) excluding an admission that the train was speeding; (9) excluding testimony regarding the use of certain lenses in flashing lights; (10) excluding an instruction manual that should have been handed over to plaintiffs during discovery; (11) refusing to hold railroads strictly liable for accidents occurring at public grade crossings; and (12) striking the non-possessory attachment order after the jury determined that CVR was not liable for plaintiffs' injuries.

## II.

We first consider plaintiffs' claim that the trial court abused its discretion by joining for trial the passengers' cases and the driver's case. Plaintiffs contend that joining the cases prejudiced the passengers because the jury might not have understood that any causal negligence on the part of CVR would make CVR liable to the passengers regardless of whether the

driver was negligent. In support of their contention, plaintiffs cite several cases for the proposition that joining complaining passengers and driver at the same trial is reversible error. See *Dupont v. Southern Pacific Co.*, 366 F.2d 193 (5th Cir. 1966); *Atkinson v. Roth*, 297 F.2d 570 (3d Cir. 1961); *Brinks v. Chesapeake & O. Ry.*, 295 F. Supp. 1318 (W.D. Mich. 1969).

■ A court may order a joint trial when pending actions involve "a common question of law or fact." V.R.C.P. 42(a). On the other hand, a court may order a separate trial of any claim or issue in furtherance of convenience, expedition and economy, or to avoid prejudice. V.R.C.P. 42(b). Because V.R.C.P. 42 is substantially similar to Fed. R. Civ. P. 42, see Reporter's Notes, V.R.C.P. 42, we look to federal case law for guidance. We begin our analysis by noting that a trial court is given broad discretion to determine whether a joint trial is appropriate, see, e.g., *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958); however, when a joint trial aligns parties in part of the litigation, and those same parties have conflicting interests regarding other aspects of the litigation, it may be improper to join the actions.

The cases cited by plaintiffs illustrate the preceding point, but are inapposite to the instant action.[1] *Atkinson* arose out of a car-truck collision, which resulted in several separate actions, including some by passengers against both drivers, and others against third-party defendants. The Third Circuit overruled the trial court's decision to join for trial[2] the various actions,

---

[1] *Brinks v. Chesapeake & O. Ry.*, 295 F. Supp. 1318 (W.D. Mich. 1969), is plainly inapposite. In *Brinks*, the court required a separate trial of the defendant railway's third-party complaint for contribution against the estate of the driver on the grounds that the issues in the third-party action were distinct from the issues in the primary action and that resolution of the primary action might obviate the third-party action. *Id.* at 1321.

[2] We disagree with defendant's contention that the use of the term "consolidate" in the federal case law under discussion refers to an issue distinct from the issue at hand in the instant action. Both the federal and the Vermont versions of Rule 42 refer separately to "joint trials" and "consolidation." The Vermont rule requires that "consolidation" be with the consent of the parties. Although the term "consolidation" may have more than one meaning, the federal courts have not construed the term to permit the merger of suits in a single cause of action. See *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496–97 (1933); *Albert v. Maine Central R.R.*, 898 F.2d 5, 7 (1st Cir. 1990); *Ivanov-McPhee v. Washington Nat'l Ins. Co.*, 719 F.2d 927, 928–30 (7th Cir. 1983). Consequently, the use of the term.

stating that the confusing array of claims and counterclaims, coupled with the presence of one of the drivers as both plaintiff and defendant, burdened the court and jury and prejudiced the parties to such an extent that separate trials were needed. *Atkinson*, 297 F.2d at 575–76. In *Dupont*, although the plaintiff survivors of the driver of a car involved in a car-train collision were not also defendants in the action, the survivors of the guest passengers did contend that the accident resulted from the concurrent negligence of the driver and the railroad. In determining that the actions of the survivors of the passengers and of the driver belonged in separate trials, the Fifth Circuit held that the trial court had prejudiced the rights of parties having a clear conflict of interest by ordering the designation of a lead counsel for all plaintiffs. 366 F.2d at 196–97.

In the instant case, the driver did not appear as a defendant, nor did any of the passengers allege that the driver was concurrently negligent. Indeed, plaintiffs, who were all represented by the same counsel, pointed out in their opening statement to the jury that the identity of the driver was uncertain.[3] Thus, the case at bar is more analogous to *Getz v. Robinson*, 232 F. Supp. 763 (W.D. Pa. 1964), in which the court held that the action of an automobile passenger against the driver of the other car and the action of the other driver against the host driver were properly tried together where each case involved the same witnesses and had common issues of fact and where the passenger did not assert that his host had been guilty of negligence. *Id.* at 765–66. In distinguishing *Atkinson*, the *Getz* court stated:

> [T]he [host] driver . . . had to keep his counterclaims free from contributory negligence, but in this he was not at "cross purposes" with his passenger, for [his passenger] did not sue [him], and in [the passenger's] complaint, pretrial narrative, and at trial, in all respects, he was in accord with his host . . . in asserting that the [other] driver . . . was the sole negligent cause of the accident.
>
> At the trial, [the other driver] . . . strove to prove that [the host driver] was the *sole* negligent cause of the acci-

---

"consolidate" in the federal case law under discussion is equivalent to the use of the term "joint" in the instant case.

[3] The issue of who drove the car was not seriously contested at trial.

dent and succeeded in so persuading the jury. [The host driver] and his passenger . . . strove to prove that [the other driver] was the sole negligent cause of the accident and failed.

*There never was any contention, suggestion, or testimony on the part of [the passenger] that his host . . . was responsible in any way for the accident or his injuries.*

*Id.* at 766 (emphasis in original).

The separate actions brought by the passengers and the driver in the instant case arose from the same accident, involved the same facts, and implicated the same legal theories aside from the contributory negligence aspect of the driver's case. Further, the passengers never alleged any contributory negligence on the part of the driver, and plaintiffs' counsel reminded the jury of the legal distinction between the passengers' actions and the driver's action on numerous occasions, including during jury selection. Where the facts and legal issues of the various claims in a suit are related and reasonably straightforward, particularly where there are no cross-claims among the parties and where interrogatories to the jury can alleviate any potential confusion, see *Stemler v. Burke*, 344 F.2d 393, 396 (6th Cir. 1965); *Farrell v. American Flyers Airline Corp.*, 42 F.R.D. 341, 342 (S.D.N.Y.), *mandamus denied*, 385 F.2d 936 (2d Cir. 1967), *cert denied*, 390 U.S. 1012 (1968), joint trials are appropriate. This is precisely the situation we have here. Had there been separate trials, the jury would have had to wrestle with the same issue in each trial: whether CVR was negligent and, if so, whether that negligence contributed to plaintiffs' injuries. The trial court did not abuse its discretion in ordering a joint trial of the passengers' and driver's claims in the instant action.

### III.

Defendant next contends that the jury charge constituted reversible error in that (1) it did not state that there can be more than one proximate cause of an accident; (2) its description of a motorist's legal standard of care, in effect, directed a verdict for defendant; and (3) it did not, as a whole, "breathe the true spirit and doctrine of the law."

■■ We note initially several well-settled principles regarding jury instructions. First, a party appealing a jury charge has the burden of establishing that the charge was both erroneous and prejudicial. *Sachse v. Lumley*, 147 Vt. 584, 588, 524 A.2d 599, 601 (1987). Second, the trial court has the duty to instruct the jury fully and correctly upon every point raised by the evidence that is material to the decision of the case. *Id.* But "the court is not required to make every comment that conceivably could be made on the issues and evidence. The degree to which the court is to elaborate on the points charged lies within the sound exercise of its discretion." *Currier v. Letourneau*, 135 Vt. 196, 204, 373 A.2d 521, 527 (1977). Finally, in determining the propriety of an instruction, the charge must be considered as a whole with an eye to its general content, and not piecemeal in isolated segments. *Paton v. Sawyer*, 134 Vt. 598, 600, 370 A.2d 215, 216 (1976); *Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 396, 264 A.2d 796, 801 (1970).

## A.

Plaintiffs allege that the trial court's failure to state specifically that more than one proximate cause is possible confused the jury into believing that a finding of contributory negligence on the part of the driver automatically absolved the railroad of any liability toward the passengers. We disagree.

The pertinent part of the charge read as follows:

This trial involves four separate lawsuits. They have been tried together as much of the evidence is relevant to all cases, however, each case does present different facts and different issues in determining liability and damages. For this reason I shall briefly summarize the claims common to all the cases and then the different damages sought by each plaintiff.

. . . .

The first question that you must answer is whether or not the defendant Railroad was negligent in the manner in which it warned motorists of the approach of a train at the Jonesville crossing on February 4, 1978?

The second question you must answer is[,] if you have found that the Railroad was negligent in warning motor-

ists[,] was that negligence a proximate cause of the accident which occurred on February 4, 1978?

I would suggest that you answer these first two questions before you consider any other issues in the case. If you decide either of these questions in favor of the railroad then your deliberations will be over and your verdict must be for the defendant. If, however, you decide that the Railroad was negligent and that that negligence was a proximate cause of the accident then you will proceed to decide the issues raised by each of the cases. If you reach a consideration of the individual cases I would suggest that you consider them individually even though some of them involve similar issues of law. I would suggest that you first consider the case involving the estate of David Mobbs.

. . . .

If you find that David Mobbs was not negligent or if he was that that negligence was not a proximate cause of the accident then you should proceed to determine the damages resulting from the death of David Mobbs. . . .

When you consider the other three cases other than David Mobbs' case you should not consider any negligence of David Mobbs, the driver, in determining what damages you should award.

At another point in the charge, the judge instructed:

If you find that the defendant was negligent and that that negligence was a proximate cause of the accident, then you should consider what damages resulted to [the passengers] without regard to any negligence you may find on the part of [the driver].

 We believe that this charge correctly and unambiguously apprised the jury of its duty to consider the varying legal relationships in the four cases. Although the court did not specifically tell the jury that more than one proximate cause was possible, the use of the indefinite article "a" rather than the definite article "the" in the context of the charge's overall directive made it plain that more than one proximate cause of the accident was possible. See *Gibson v. Erie-Lackawanna R.R.*, 378 F.2d 476, 479 (6th Cir. 1967) (jury instructions using term

"*the* proximate cause" incorrectly suggested that only single cause of accident was possible) (emphasis in original); *Stemler v. Burke*, 344 F.2d at 396–97 (where issue was concurrent proximate cause, there was a "material legal distinction between the words 'the proximate cause' and 'a proximate cause'"—use of words "a proximate cause" recognizes legal principle that there may be more than one proximate cause); cf. *Johnson v. State*, 636 P.2d 47, 63 (Alaska 1981) (instruction stating that "a" proximate cause is a cause which produces injury adequately conveyed concept that liability attaches upon any one proximate cause). In addition, we note that plaintiffs' counsel directly stated without objection during closing argument that there can be more than one proximate cause of an accident, and that the railroad could be held liable for injuries sustained by the passengers despite any driver negligence.

■ Plaintiffs claim that the court erred by telling the jury that it should not consider any negligence on the part of the driver "in determining what damages [it] should award." Plaintiffs contend that the court should have told the jury not to consider the driver's negligence in determining whether the defendant was *liable* to the passengers. The trial court's statement, even if technically erroneous, was harmless. For the jury to have reached the interrogatories concerning damages to the passengers, the causal negligence of the railroad would have to have been established by it in prior interrogatories. Thus, liability was a proper assumption.

■ Plaintiffs further contend that the trial court erred by not explicitly stating that the driver could recover damages from CVR even if the driver was negligent and his negligence was part of the cause of the accident, as long as the driver's negligence was less than that of CVR. Assuming arguendo that this omission constituted error, it certainly was harmless here in light of the fact that the jury specifically found that CVR's negligence did not cause the accident.

In brief, the trial court's charge in reference to proximate cause adequately conveyed the principle that the passengers could recover from defendant even if the driver's causal negligence was great and CVR's causal negligence was relatively minor.

## B.

Plaintiffs next allege that the court's charge regarding the duty of a motorist when approaching a train crossing was tantamount to a directed verdict. Again, we disagree.

The relevant portions of the charge read as follows:

Motorists are also held to the standard of care of a reasonably prudent person; however, experience has led the court to adopt and the legislature to enact certain rules applicable to this case which you may consider as factors on the question of the negligence of the railroad and David Mobbs.

. . . . [duties of railroad omitted]

A driver approaching a railroad grade crossing shall stop within fifty feet of but not nearer than fifteen feet from the nearest rail of the railroad and may not proceed until he can do so safely when an electric or mechanical signal device gives warning of the immediate approach of a railroad train, a railroad train approaching within eighty rods, or 1,320 feet of a highway crossing emits a signal audible from that distance and the train by reason of its speed or nearness is an immediate hazard or a railroad train is plainly visible and is in hazardous proximity to or is at the crossing.

When a motorist is temporarily blinded, it is his duty either to stop until his vision is restored or to reduce his speed and have his car under such control that he can stop it immediately, and his failure to do so justifies a charge of negligence by failing to take measures for his safety and that of others. He has no right to drive along in a blinded condition and take a chance on what may be in the road ahead.

The operator of a motor vehicle has a duty to have his vehicle under reasonable control so as to avoid injury which requires that the speed of the vehicle be reasonable under all circumstances, having regard for the actual and potential hazards then existing. The extent of control is the ability to stop as quickly and easily as circumstances may reasonably be expected to require, and when the result is not accomplished the inference is obvious that the vehicle

was going too fast or that a proper effort to control it was not made by the driver.

The driver of every vehicle shall drive at an appropriate reduced speed when a special hazard exists.

The operator of a motor vehicle is chargeable with knowledge of objects in plain view. The duty to keep a proper lookout not only requires that a person look but that he see what is within the range of his effective vision and it cannot avail a party to say that he looked but did not see where the object is in plain view.

A prudent driver approaching a grade crossing must look and listen for trains. If his view is obstructed it is his duty to make vigilant use of his hearing. The driver is presumed to have heard whatever there was to be heard if he listened. His failure to hear the horn indicates that he did not exercise his hearing with reasonable diligence.

The maintenance of a railroad across a public highway is notice to all the world that trains are likely to be running on it and a driver cannot escape his duty of care by assuming that the track will be clear.

Now, those are the statutory and case law rules that have been established in addition to the reasonable care or prudent man doctrine.

If you find that either party violated any of these rules you may consider that fact in determining whether or not that party was negligent.

These instructions are a correct statement of the law. In *Starr's Transportation, Inc. v. St. Johnsbury & L.C.R.R.*, 123 Vt. 376, 189 A.2d 525 (1963), this Court affirmed a directed verdict for the defendant railroad in a case in which a truck driver drove his rig into an oncoming train. The truck driver claimed that he neither saw nor heard the train because his view was obstructed and his windows were rolled up. In response, we held as follows:

It was the duty of the driver to look and listen for approaching trains as he neared the crossing until the last moment when the discovery of the train would have availed for his protection. He was chargeable with such knowledge of the approach of the train as he might have obtained by

such vigilant use of his senses as a careful and prudent person would make in such circumstances. Where his vision was obstructed, he should have been especially vigilant as regards his hearing. . . .

. . . The driver stated he heard no horn, yet another witness put on by the plaintiff testified that he heard the horn blown more than once. Since the driver must be presumed to have heard whatever there was to be heard, if he listened, his failure to hear the horn indicates that he did not exercise his hearing with reasonable diligence. . . .

. . . [T]he very maintenance of a railroad across a public highway is notice to all the world that trains are likely to be run thereon; the traveler cannot escape the duty of due care by assuming the track will be clear.

*Id.* at 380–81, 189 A.2d at 528; see also *Baldwin v. State*, 126 Vt. 70, 74, 223 A.2d 556, 560 (1966) (quoting same language from *Starr's Transportation*).

■ These principles are applicable to the instant case. Assuming this was not an instance where he attempted to "beat" the train, the driver, for whatever reasons—the rolled-up windows, the turned-on heater, the glare from the sun and snow, or the limited view of the tracks—apparently did not hear or see the oncoming train. Witnesses testified, however, that the train did indeed blow its horn more than once and that they heard the horn sound its warning; other witnesses testified that they saw the lights flashing at the crossing. Thus, the charge regarding the driver's duties was proper. We also note that the use of "his" and "he" in the charge referred to "the prudent driver" and not David Mobbs; the court did not direct the jury to find David Mobbs contributorily negligent.

## C.

Finally, in regard to the jury charge, plaintiffs contend that the instructions as a whole did not "breathe 'the true spirit and doctrine of the law.'" See *Choiniere v. Sulikowski*, 126 Vt. 274, 277, 229 A.2d 305, 307 (1967) (quoting *In re Moxley's Will*, 103 Vt. 100, 114, 152 A. 713, 718 (1930)). *Choiniere* stands for the principle "that error is not to be read into the charge by isolat-

ing small segments of it," but by looking at the charge as a whole. *Id.* Based on the two excerpts of the charge quoted above, from which the great majority of plaintiffs' assignments of error arise, we believe that the trial court provided the jury with an appropriate summary of the law of this state regarding proximate cause and a motorist's duties when approaching a grade crossing. The court's instructions clearly stated that the passengers could be awarded damages even if the driver's negligence precluded him from collecting damages, and that a motorist cannot avoid liability for an accident by claiming that he did not see or hear that which evidence shows was plain to see or hear. Considering the facts of this case as developed at trial, the essence of the charge was a fair statement of the law and the trial court did not abuse its discretion in choosing the particular language that it did.

## IV.

Plaintiffs next claim that the trial court erred in its evidentiary rulings regarding (1) methods of preventing the accident, (2) accidents at Jonesville and at other crossings, (3) the driver's failure to use a seat belt, (4) defendant's admission that the train was travelling over the speed limit, (5) the railroad's use of certain lenses in flashing lights, and (6) an instruction manual for the flashing lights at the Jonesville crossing. None of the court's rulings constitute reversible error.

## A.

Plaintiffs' contention that the trial court excluded evidence regarding possible methods of preventing the accident is misleading. As the following excerpts from a long, involved dialogue between the court and plaintiffs' attorney indicate, the court merely ruled that plaintiffs would not be permitted to present conclusive expert testimony stating that one or another method would necessarily have prevented the accident:

THE COURT: It's certainly pertinent and relevant . . . to show that it was negligent for the railroad not to have the [crossing gate] there at the time [of the accident], but you cannot discuss it in terms of preventing the accident be-

cause there is no way on God's earth that anybody can say that a . . . gate would have prevented an accident.

. . . .

MR. KOHN: All I want to be able to do is say that the railroad should have had a gate at this crossing, and that the jury in its discretion should have decided—

THE COURT: Listen, I have no problem with that, and I have never had a problem with that. . . . You're entitled to present evidence by an expert that a gate was a necessary thing, that it was negligent not to have a gate.

. . . .

[T]he expert can buttress his opinion that a gate should have been there, that it was negligent for it not [to be] there, by showing the statistics [on which his opinion is based].

MR. KOHN: So we can say that gates reduce the risk of accidents at railroad crossings in our case.

THE COURT: You can say . . . [a] gate at this railroad crossing . . . [w]ould have reduced the accident potential.

MR. KOHN: [The expert] says . . . that there is a high probability that this accident would not have occurred if there were a gate at the crossing.

THE COURT: That's a little different than what we were talking about before.

MR. KOHN: Okay.

■ It was not an abuse of the trial court's discretion to preclude plaintiffs' expert from concluding that the accident would not have occurred had a crossing gate been put up at the Jonesville crossing. The jury was repeatedly informed both by the court and by plaintiffs' counsel of plaintiffs' claim that CVR was negligent in not installing a gate at the Jonesville crossing. Further, plaintiffs' expert traffic engineer testified at trial that the warning system at the crossing was unsafe and inadequate to warn the driver and that the installation of gates reduces by two-thirds the number of accidents at crossings that previously had only flashing lights. Based on this evidence, the jury could

have found, but declined to find, that the failure of CVR to install a gate was a proximate cause of the accident.

## B.

Plaintiffs contend that the trial court erred by allowing CVR to introduce evidence about the accident history at the Jonesville crossing while prohibiting them from presenting evidence about the accident history at other grade crossings. We agree with the trial court that evidence of the accident history at other grade crossings is irrelevant and remote because evidence of this nature pertains to CVR's duty toward other motorists rather than the proximate cause of the instant accident. Apparently, plaintiffs contend that evidence of accidents at other crossings having flashing lights but no gates could have affected the jury's determination that CVR's negligence did not cause the accident. We disagree. The jury was well-informed of plaintiffs' theory regarding crossings without gates and in fact heard expert testimony that gates reduce the risk of accident. Moreover, the jury did find that CVR was negligent. We are unable to conclude that the court abused its discretion by ruling that evidence of accidents at other crossings was too remote. See *State v. Shaw*, 149 Vt. 275, 278, 542 A.2d 1106, 1107 (1987) (rulings on remoteness lie within trial court's discretion). Any evidence of accidents at other crossings is too attenuated to support a finding of proximate cause herein.

For the same reason, we reject plaintiffs' argument that the trial court abused its discretion by excluding evidence of accidents that occurred at the Richmond crossing before its lights were moved from Richmond to Jonesville in 1961. Even though the light fixtures would have been identical, the physical surroundings of the two sites were not so similar that the court's decision was an abuse of discretion.

Plaintiffs also contend that the trial court erred when it allowed defendant to present evidence that no prior accidents had occurred at the Jonesville crossing. Generally, when the party seeking admission of the evidence can show substantial similarity of conditions, evidence of no prior accidents is admissible to show "(1) absence of the defect or condition alleged, (2)

the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger." E. Cleary, McCormick On Evidence § 200, at 591–92 (3d ed. 1984); e.g., *Wollaston v. Burlington Northern, Inc.*, 188 Mont. 192, 202, 612 P.2d 1277, 1282 (1980) (evidence of whether there had been prior accidents at grade crossing was relevant to issue of whether additional protection was required at crossing). Further, when the prior safety record is so extensive that it is sure to include an adequate number of similar situations, the similarity requirement is satisfied. McCormick, *supra*, at 591; see *Erickson v. Walgreen Drug Co.*, 120 Utah 31, 40–41, 232 P.2d 210, 214–15 (1951) (error to exclude evidence that no one had slipped on terrazzo entranceway, regardless of weather conditions, for the fifteen years during which at least 4,000 persons had entered store every day); *Stark v. Allis-Chalmers*, 2 Wash. App. 399, 406, 467 P.2d 854, 858 (1970) (no abuse of discretion in admission of evidence that there had been no similar accident with 10,000 other tractor loaders of the same model); *Stein v. Trans World Airlines*, 25 A.D.2d 732, 732, 268 N.Y.S.2d 752, 752–53 (1966) (error to exclude evidence that many thousands had walked through the same area in air terminal without slipping). The safety record admitted in the instant case is extensive enough to satisfy the substantial-similarity requirement; thus, the court did not abuse its discretion by admitting the accident history of the Jonesville crossing. Plaintiffs' claim of error is not supported by *Lucia v. Meech*, 68 Vt. 175, 179, 34 A. 695, 695–96 (1896), where this Court affirmed the exclusion of evidence showing that no other animals had escaped through the fence the defendant bailee had been hired to maintain. The proffered evidence in that case was not so extensive as to assure an adequate number of similar situations.

## C.

We need not address in length plaintiffs' contention that the court improperly allowed defendant to offer evidence of the driver's failure to wear a seat belt as an indication of his

negligent behavior. Plaintiffs contend that V.R.E. 404(a)[4] and case law preclude the court from admitting evidence that Mr. Mobbs was not wearing a seat belt. Yet, this evidence is manifestly not character evidence, nor was it presented to the jury as such; therefore, V.R.E. 404(a) does not govern. In any case, the contention that the jury may have declined to find that CVR's negligence caused the accident because of the driver's failure to wear a seat belt is without merit; the question of whether the driver wore a seat belt does not affect the issue of proximate cause.

### D.

Plaintiffs further contend that the court erred by excluding a document written by defendant's investigator based on a consultant's report, which estimated that the train was travelling at a speed of forty-five miles per hour rather than the forty miles per hour estimated by the train's conductor. The consultant was not an employee of CVR and did not appear at trial. Accordingly, the trial court excluded the document as hearsay, noting that it was not an admission because CVR had submitted the document during discovery with the contention that the consultant had made an incorrect assumption regarding the information on which the calculation of the train's speed was based. The exclusion of this document was not an abuse of the trial court's discretion. In any event, whether the train was travelling at forty miles per hour or forty-five miles per hour is immaterial to the issue of proximate cause in this case; it is plain from the record that the train would not have been able to stop at either speed.

### E.

Plaintiffs also contend the trial court abused its discretion (1) when it excluded certain portions of a deposition that indicated that CVR normally followed Canadian National Railway recommendations with respect to types of lenses in flashing

---

[4] V.R.E. 404(a) provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ."

lights, and (2) when it excluded an instruction manual on the flashing lights despite the fact that defendant used the manual in cross-examining plaintiffs' expert. In both cases, even assuming the trial court erred in excluding the evidence, the error was harmless. In the first instance, other portions of the deposition adequately conveyed to the jury the fact that the Jonesville crossing lights had lenses offering a narrower range of light than those used at most crossings. In the second instance, the trial court's belief that the manual was confusing and complex was reasonable, particularly in light of the manual's vagueness regarding when wider lenses are to be employed. In any event, CVR was not required to follow the manual's recommendations. We will not disturb the trial court's decision to exclude the evidence in either instance.

## V.

Finally, plaintiffs ask us to hold railroad companies strictly liable for all accidents at public crossings or, at a minimum, to consider the failure to install crossing gates prima facie evidence of a railroad's negligence. We decline to follow either of these suggestions.

We note initially that no state in this country has held that strict liability should apply in such situations. See, e.g., *Ruiz v. Southern Pacific Transp. Co.*, 97 N.M. 194, 199–201, 638 P.2d 406, 411–13 (Ct. App. 1981). Historically, this Court has been reluctant to invoke the doctrine of strict liability. Not until *Malloy v. Lane Construction Corp.*, 123 Vt. 500, 503, 194 A.2d 398, 400 (1963), did we first employ the doctrine, concluding that damages occurring as the foreseeable consequence of an extrahazardous operation—in that case, a blasting operation—will subject the actor to liability, even in the absence of negligence. But in *Bosley v. Central Vermont Public Service Corp.*, 127 Vt. 581, 582–85, 255 A.2d 671, 672–74 (1969), we declined to apply the doctrine of strict liability to accidents involving electric transmission lines. An implied basis of that decision was that electricity had become a necessary part of everyday life, and that its usefulness should not lightly be impaired or curtailed by application of the doctrine of strict liability to accidents involving electric power lines. *Id.* at 584, 255 A.2d at 673.

A similar analysis is applicable in the instant case. While railroads may not be as common or as socially and economically vital as they once were, they are still a common mode of transportation and an important element of the socio-economic fabric of the state. Although trains and grade crossings are dangerous, we cannot conclude that they constitute an "abnormally dangerous activity" such as to warrant judicial imposition of the doctrine of strict liability to all accidents at railroad crossings where gates have not been installed. The record is devoid of any compelling support for the application of the doctrine of strict liability in the instant case.

Because we affirm the jury's decision, we need not address the issue of whether the trial court order striking the nonpossessory attachment against CVR should be reversed.

*Affirmed.*